## GOODRICH *against* WOOLCOTT.

MOTION in arrest of judgment, for the insufficiency of the declaration. This contained 4 counts, in slander, upon which a general verdict had been found for the plaintiff; and the motion was founded upon the insufficiency of the last count only, the goodness of the others being conceded by the counsel for the defendant. The declaration contained a general recital, that " the said *Charles* (the defendant)

*A count in slander, charging that the defendant uttered and published these words: "He" (meaning the said I. the plaintiff) "has been with a sow; and I (mean-*

ing the said *C.* the defendant,) can prove it," preceded and followed by a recital and averment, that the words were intended to charge the plaintiff with the crime against nature, &c. *held* sufficient.

Where words are of doubtful import, the jury are to find their meaning.

The office of an *inuendo* is merely explanatory. It cannot enlarge the meaning of words beyond their natural signification.

contriving and wickedly and maliciously intending to injure
the said *Issachar* (the plaintiff) in his good name, fame and
credit, and to bring him into public scandal, infamy and dis-
grace with and among all his neighbors, and other good and
worthy citizens of this state, and to cause it to be suspected
and believed that he, the said *Issachar*, was a person of un-
natural passions and appetites, and was guilty of the abom-
inable and detestable crime against nature; and to cause
him to be abhorred and shunned as a person unfit for, and
unworthy of all society; and to subject him to the pains and
penalties by the laws of this state made and provided,
and inflicted upon persons guilty thereof; and to vex, har-
rass, oppress, impoverish, and wholly ruin the said *Issachar*,
on, &c. at, &c." spoke the words in the 1st count. The
4th count was as follows: "That on, &c. at, &c. the said
*Charles*, farther contriving, and intending as aforesaid, in a
certain other discourse, which he, the said *Charles* then and
there had, of and concerning the said *Issachar*, in the pres-
ence and hearing of divers other good and worthy citizens of
the state aforesaid, then and there, in the presence and hear-
ing of the said last mentioned citizens, falsely and mali-
ciously spoke and published of and concerning the said *Issa-
char*, these other false, scandalous, malicious and defama-
tory words, following, that is to say; *He* (meaning the said
*Issachar*) *has been with a sow; and I* (meaning the said
*Charles*) *can prove it.*" And the said *Issachar*, in fact,
saith, that the words last aforesaid were so uttered and
published by the said *Charles*, with intent and meaning to
convey, and that the same were by the said last mentioned
citizens, in whose presence they were so uttered and pub-
lished, understood and believed to convey a charge against
the said *Issachar*, that he was a person of unnatural passions
and appetites, and capable of committing, and had commit-
ted the detestable and abominable crime against nature, and
that he the said *Charles* could prove it; and was thereby ren-
dered infamous and unfit for, and unworthy of all society;
and was subject to the pains and penalties by the laws of this
state made and provided and inflicted upon persons guilty
thereof. By means, &c."

*Z. A. Leland* for the defendant. It is well settled, that an inuendo does not enlarge the sense of the words : and we have, therefore, a right to consider the words charged to have been spoken, entirely independent of any averment in this count as to their meaning.

[The counsel was about to cite authorities to this point, but the *Court* told him it was too plain to require any reference to authorities.]

*Leland.* The modern doctrine is well established, that the words charged must, of themselves, clearly convey the idea of a crime ; and, indeed, neither the ancient nor modern cases will support this count. In *Miller* v. *Buck-don.*(a) the defendant and another, having some speech about the death of a child of one *Dowland,* the defendant said that the plaintiff was the cause of the death of the child, and that he (the defendant) would swear it upon a book. On verdict for the plaintiff, a motion was made in arrest ; and the Court held the words not actionable for want of a colloquium, pointing them to a case of poisoning, murdering or some other untimely death. Without this, they were pronounced too general ; that the plaintiff *caused* the death, was not enough ; and the Court put a case by way of illustration, that one may be the cause of another's death, and yet be perfectly innocent ; as where it is caused by lawful imprisonment. In *Harrison* v. *King,*(b) on error to the exchequer chamber, the words in one count were, " I will take him to *Bow-street* on a charge of forgery ;" *inuendo,* that the plaintiff had been guilty of forgery. On verdict and judgment for the plaintiff, generally, upon all the counts, the error assigned was, " that the words did not import any express or precise imputation of the plaintiff below having committed forgery ; but only an intention of the defendant below to take the plaintiff to *Bow street* (without shewing where, in that street, or for what purpose, upon a charge of forgery, without stating by or against whom made, or of what forgery,) and which words of themselves constituted no cause of action, although they were laid in a separate count, as a separate cause of action, without any special damage." And for these causes, the judgment was reversed.

(a) 2 *Bulstr.* 10.

(b) 7 *Taunt.* 431.

UTICA,
Aug. 1824.

Goodrich
v.
Woolcott.

(c)     Cowp.
275.

(d)     Rep.
Temp. Hardw.
325.

(e) 9 East,
93.

(f) Onslow
v. Horne, 3
Wills. 177.
(g) Harri-
son v. Strat-
ton, 4 Esp.
Rep. 218.
(h) Holt v.
Scholfield, 6 T.
R. 690. Hop-
kins v. Bea-
dle, 1 Caines'
Rep. 347.
(i) 6 T. R.
694.

Peake v. Oldham (c) will probably be relied on for the plaintiff; and is undoubtedly the strongest case against us. There the defendant told the plaintiff he was *guilty* of the death of a person. This was charged in the 4th count ; the others being sufficient. Ld. *Mansfield* lays much stress upon the word *guilty*, which is wanting here, as showing from the whole frame of the words, that they imported a charge of murder. Upon the same principle, in *Carpenter* v. *Tarrant*, (d) these words were holden actionable : " *Robert Carpenter* was in *Winchester* gaol, and tried for his life, and *would* have been hanged, had it not been for *Leggat*, for breaking open the granary of farmer A, and stealing his bacon." So in *Roberts* v. *Camden*, (e) " He was under a charge of prosecution for perjury, and *G. W.* an attorney, had the Attorney General's directions to prosecute him for perjury," were holden actionable. Lord *Ellenborough* says, " the words must mean that he was ordered by the Attorney General to be prosecuted, either for a perjury which he had committed, or which he had not committed ; or which he was supposed only to have committed. In the first sense, they are clearly actionable. In the second, they cannot possibly be understood consistently with the context. He concludes upon the whole matter, that these words must fairly be understood in the first of the three senses, and refers to *Carpenter* v. *Tarrant*. The words should convey a charge directly ; not merely by way of inference. (f) They should not be doubtful or equivocal. (g) Within this rule, saying of the plaintiff he is forsworn, is not slanderous, unless it be said of some judicial proceeding in which he had been sworn. (h) The rule, as laid down by Ld. *Kenyon*, is, that " either the words themselves must be such as can only be understood in a criminal sense, or it must be shewn by a colloquium in the introductory part, that they have that meaning, otherwise they are not actionable." (i) " You swore to a lie, for which you stand indicted," were holden actionable by this Court, on the ground that the concluding words, " *you stand indicted*," imply that the false oath could have been none other than

perjury ; otherwise an indictment would not lie.(*j*) Independent of such an explanation, most clearly the words would not have been actionable.(*k*) *Brooker* v. *Coffin*,(*l*) was strikingly analagous to the present case. The frame of the words imported perjury, much more directly than those in the present case import the crime against nature or any other crime ; yet they were holden not actionable.

Suppose it asserted of a man that he was with a woman, would it imply an illicit connexion ? A charge of *hooking,* or of being a *cow-boy,* have been holden not actionable. There should be a fixed legal sense to words, by which their quality can be certainly determined. General understanding would pronounce a charge of swearing false to import perjury ; yet, in themselves, these words are clearly not so. It is, therefore, no argument for sustaining this count, that by-standers may have understood the words charged to import the crime of bestiality.

*S. M. Hopkins,* contra. Is it true, that, in order to maintain an action of slander, the crime imputed must be charged in legal terms ? Is it true, that the slanderer shall escape, if he evades the use of technical or legal terms, although he utter those which all mankind understand to import an abominable crime ? Take the words " hooking," or " cow-bow," put by the gentleman ; is there no way in which a pleader may so frame a declaration as to reach the real intent of the speaker, and make them a slander upon record ? How the declaration should be drawn, in such cases, I do not undertake to say ; but it would be a libel upon the law, and a still greater one upon counsel, to say that it could not be done. Take the case put, of " being with a woman ;" might not such a charge be preceded or followed by such explanations, as to make it convey a charge of adultery ? The law says that a man may be libelled by paintings or pictures ; and yet is there no mode of declaring by which he can reach the offence ? Certainly he may do this, no matter how equivocal the slander.

As to cases ; we rely principally upon *Peake* v. *Oldham,* already cited from *Cowper,* and two cases in *East, Woolnoth*

UTICA,
Aug, 1824.

Goodrich
v.
Woolcott.

(*j*) *Pelton*
v. *Ward,* 3
*Caines' Rep.*
73.

(*k*) *Ward* v.
*Clark,* 2 *Johns.*
*Rep.* 10. *Cof-*
*ford* v. *Green,*
1 *id.* 505.
(*l*) 5 *id.* 188.

(m) 5 East,
463.
(n) 9 id. 93.

v. *Meadows* ;(m) and *Roberts* v. *Camden*,(n) the latter also cited on the other side. *Woolnoth* v. *Meadows* will be found a precedent for most of the count in question. The same introductory matter, and the same concluding averments and inuendos, almost word for word, will be found there ; and the words charged were certainly not more definite than here, in fixing the crime. They were these : " His character is infamous. He would be disgraceful to any society. Whoever proposed him must have intended it as an insult. I will pursue him, and hunt him from all society. If his name is enrolled in the royal academy, I will cause it to be erased, and will not leave a stone unturned, to publish his shame and infamy ; delicacy forbids me from bringing a direct charge ; but it was a male child of nine years old, who complained to me." Such words, accompanied with our averments, were held actionable. This is after verdict. The jury have passed upon the case ; and where words are equivocal, it is the province of the

(o) *Cowp.*
277, *per Ld.*
*Mansfield.*

jury to determine their import.(o) They have declared that the words intended to convey the imputation averred. If it be said that the declaration here varies from that in *Woolnoth* v. *Meadows,* in not naming the crime, we answer, that it is enough to follow the statute, which also for-

(p) 1 *R. L.*
408, *s. 3.*

bears to name it ;(p) whereas the statute of *Henry* 8, does give the crime a name. This accounts for its being named by the English pleader. That it was not named in this instance, arose from a delicate and accurate distinction between the English act and ours ; and the Court will the more readily countenance this general form to avoid offensiveness.

In the language of Ld. *Mansfield,* then, in *Peake* v. *Oldham,* will the Court, after the jury have found the fact, " be guessing and inventing a mode in which it may be barely possible for these words to be spoken by the defendant, without meaning to charge a crime ?" That case is full to our purpose. " The jury," says he, " have found the fact, namely, that such was the meaning of the defendant." And he also cites and comments upon the manu-

script case of *Ward* v. *Reynolds,* which is still more strongly in point. The defendant said to the plaintiff, "I know you very well; how did your husband die?" The plaintiff answered, "As you may, if it please God." The defendant replied, "No; he died of a wound you gave him." On not guilty, there was a verdict for the plaintiff; and on motion in arrest of judgment, the Court held the words actionable; because, *from the whole frame of them, they were spoken by way of imputation.*" And Ld. Ch. Justice *Parker* said, " It is very odd that, after verdict, a Court of Justice should be trying whether there may not be a possible case, in which words spoken by way of scandal, might not be innocently said. Whereas, if that were, in truth, the case, the defendant might have justified, or the verdict would have been otherwise." After citing that case, Ld. *Mansfield* remarks, " So here, if found to be innocently spoken, the jury might have found a verdict for the defendant; but they have put a contrary construction, &c." *Poturite* v. *Barrel,*(q) was not stronger against the defendant than the present; and *Comyn,* (*in his Digest, action upon the case for Defamation, (E.) &c.*) refers to scores of cases, which are less so, and yet the action was held to lie. But *Peake* v. *Oldham,* is a sufficient authority, and cannot be shaken. That case begun in the Common Pleas, where the questions first came up on a motion in arrest, which was denied;(r) whence it was carried to the King's Bench; and the report in *Cowper* is on error. It was a case strongly litigated, and underwent very great examination by the ablest Judges.

*Roberts* v. *Cambden,*(s) is our last case. There the charge was, that the plaintiff was under a prosecution for perjury. Now this may be consistent with the plaintiff's perfect innocence; yet the Court were unanimous that the action lay.

*Leland,* in reply. The case of *Woolnorth* v. *Meadows,* bears no analogy to the one under consideration. The words there alleged to have been spoken, conveyed a clear charge

UTICA, Aug. 1824.

Goodrich v. Woolcott.

(q) *Sid.* 220.

(r) *W. Bl Rep.* 959.

(s) 9 *East,* 93.

of the crime to the understanding of every body. Taking the whole together, there was no room to suppose any other intent than to charge the plaintiff directly with a crime. It is evident, that nothing could have been made, out of the words in *Peake* v. *Oldham*, had it not been for the word *guilty*, used by the defendant, which was the only word the Court could find to support the record. As Ld. *Mansfield* objects, after verdict, to guessing out innocence, may we not, at least, with equal propriety, respond by asking, will the Court set themselves about guessing or hunting out guilt? What is called an averment in this case, and is relied on to help the defect in the naked words, is no more than a mere *inuendo*, and if not warranted by the words, it goes for nothing. This is now the settled doctrine, and was applied by *Spencer*, J. in *Brooker* v. *Coffin*,(*t*) to a case in principle precisely like the present. He says the averment is not warranted by the words. So here, there must be premises to warrant the inuendo, which is no more than a necessary conclusion, following the words themselves. This is not the case of a colloquium about the offence set forth in the declaration, and the words applied to it. That would have been a different thing. The apology is, that the words are offensive. Had counsel thought of this when pleading, it was easy to have helped it by a colloquium, which should have been as modest as the *inuendo*.

(*t*) 5 *John.
Rep.* 192.

There is no ambiguity in this case to be helped by a verdict. The full force of the expression comes out in the declaration; and must be tortured to make out an imputation of guilt. They are simply, " he has been with the animal." This is the whole ; and there is nothing on the record, which can be legally called in as controlling the import. In the eye of the law, it is the same as if the recital and inuendo were stricken out ; and it is hardly possible to conceive that they could impute a crime. Delicacy, either in the statute or counsel, would not forbid his pursuing the words of the act, by alleging that the defendant asserted, in substance, that the plaintiff had committed the crime against nature ; and then it would have been for the

UTICA,
Aug. 1824.

Goodrich
v.
Woolcott.

jury to say whether the words proved were tantamount to those complained of by the plaintiff.

*Curia, per* SUTHERLAND, J. The three first counts in the declaration are unquestionably good. They contain a clear and explicit charge of the abominal crime against nature, in language which none of the hearers could misunderstand. The only question is as to the fourth count. If that is bad, the judgment must be arrested, the verdict being general.

The words in the fourth count are, (" *He*," (meaning the said *Issachar*) " *has been with a sow*, and I," (meaning the said *Charles*) " can prove it." What is the plain and natural import of these words ? and what idea are they calculated to convey to the by-standers ? Can it admit of a doubt, that ninety-nine persons out of an hundred would understand them as conveying a charge against the plaintiff, of having had a criminal and unnatural connexion with a sow ? The enquiry is not whether the words *could* have been understood in any other terms, but whether that is the construction which common persons would naturally put upon them. (*Roberts* v. *Cambden, 9 East, 96, per Ld. Ellenborough, C. J.*)

In *Peake* v. *Oldham,* (1 *Cowp.* 272-3,) Ld. *Mansfield* says, " where words. from their general import, appear to have been spoken with a view to defame a party, the Court ought not to be industrious in putting a construction upon them different from what they bear in the common acceptation and meaning of them." But this count goes on and avers, " that the words last aforesaid were so uttered and published by the said *Charles*, with intent and meaning to convey, and that the same were by the last mentioned citizens, in whose presence they were so uttered and published, understood and believed to convey a charge against the said *Issachar*, that he was a person of unnatural passions and appetites, and capable of committing, and had committed the detestable and abominable crime against nature, and that he, the said *Charles*, could prove it."

If the words were of doubtful signification, it was the province of the jury to determine in what sense they were used. (*Oldham* v. *Peake*, 2 *Bl. Rep.* 961-2. *Dexter* v. *Taber*, 12 *John.* 260.) In *Woolnoth* v. *Meadows*, (5 *East*, 463,) the declaration contained an averment similar to this ; and Lord *Ellenborough*, in his opinion, (page 470.) speaking of the averment, says, " Upon a count so framed, the plaintiff must have gone into other proof than the mere speaking of the words ; and he must have not only shewn that the defendant's meaning was to impute a crime of that nature to the plaintiff, but that the words were so understood by the hearers." So in *Peake* v. *Oldham*, (*Cowp.* 278,) Ld. *Mansfield* says, " If the words had been shewn to have been innocently spoken, the jury might have found a verdict for the defendant. *But they have put a contrary construction upon the words as laid, and have found that the defendant meant a charge of murder ;* and he quotes, with approbation, the language of Lord Chief Justice *Parker*, who says, " It is very odd, that after a verdict, a Court of Justice should be trying whether there may not be a possible case, in which words spoken by way of scandal, might be innocently said. *Whereas, if that were in truth the case, the defendant might have justified, or the verdict would have been otherwise.*" In this case, therefore, the jury, by their general verdict, have found the words to have been spoken and understood in the sense set forth in the averment. The motion must be denied.

                                        Judgment for the plaintiff.