GALLAGHER v. BRYANT et al.

(Supreme Court, Appellate Division, Second Department.   November 21, 1899.)

LIBEL—NEWSPAPER ARTICLE—ACCUSATION OF CRIME—MORAL TURPITUDE.
    A newspaper article relating to one who was under indictment for the murder of a woman intimated that he was also responsible for the killing of a man, and stated that "it was positively learned that startling evidence had been given to the district attorney by G., a friend of M., who has all along been suspected of knowing all the details of M.'s actions," and that "he has made a confession of the entire affair," which will fasten the guilt on M., and that G. "had the key to the situation in the case, when detectives were started out to keep a watch on his movements." *Held*, that the complaint was not subject to demurrer, as not charging plaintiff with the crime, since words imputing moral turpitude, or which subject one to public reproach, constitute libel, when maliciously published.
    Goodrich, P. J., dissenting.

Appeal from special term, Kings county.
Action by Felix J. Gallagher against William C. Bryant, Thomas P. Peters, and James A. Sperry.   There was judgment for defendants on demurrer to the complaint, and plaintiff appeals.   Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Charles Lex Brooke, for appellant.

George H. Fisher, for respondents.

WILLARD BARTLETT, J. ·The sufficiency of the complaint in this action depends upon the question whether the article concerning the plaintiff, which was published in the defendants' newspaper, is fairly capable of being regarded as a libel or not. The article relates chiefly to a charge that Roland B. Molineux, who had been indicted for the murder of a Mrs. Adams, in the county of New York, was also responsible for the killing of a man named Henry Barnet. Under the heading of "Gallagher May Have Confessed—Startling Rumor from the District Attorney's Office—Was the Friend of Molineux," the article contained the following statement concerning the plaintiff:

"It was learned positively this morning that startling evidence has been placed in possession of the district attorney by Felix Gallagher, the ex-clerk of the Knickerbocker Athletic Club, and close friend of Molineux, who has all along been suspected of knowing all the details of the defendant's actions. It is said that he made a confession to the district attorney of the entire affair, and that it will fasten the guilt of Barnet's death firmly on the prisoner. That Gallagher held the key to the mystery in the case was positively stated in the Times last week, when the detectives were started out on Tuesday last to keep a watch on his movements."

The learned judge at special term held that the article in question could not be fairly construed as charging the plaintiff with the commission of any crime; but, conceding this view to be correct, it does not follow that the language is not libelous. Language may be libelous although it imports no criminal offense. It is enough if it is such as to subject the plaintiff to obloquy, reproach, or disgrace. "Defamatory words, in common parlance, are such as impute some moral delinquency or some disreputable conduct to the person of whom they are spoken." Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127. It follows that the imputation of moral turpitude by means of a published writing is clearly libelous. Is not the publication of which complaint is made in this action ·fairly capable of such a construction as to import that the plaintiff has been guilty of some moral delinquency, at least, in connection with the case of homicide to which the article refers? In the first place, it conveys the idea that the plaintiff has confessed something. It is true that the verb "to confess" has several different meanings, but it is ordinarily used to characterize the admission of personal sin or· wrongdoing. Then we have the statement that the plaintiff, being a close personal friend of Molineux, and having all along been suspected of knowing the details of Molineux's actions, is said to have made a confession to the district attorney of the entire affair, which will fasten the guilt of Barnet's death firmly on the prisoner. When we find this statement followed by the charge that Gallagher held the key to the mystery in the case, as was positively stated in the defendants' newspaper in the previous week, when the detectives were started

out to keep a watch on the plaintiff's movements, there seems to be a pretty clear intimation that the plaintiff's course of conduct with reference to the Barnet case had been such as justly to subject him to the detective surveillance of the police authorities. Is not the article, taken as a whole, susceptible of an interpretation imputing moral turpitude to the plaintiff arising out of his knowledge of a murder mystery, and his concealment thereof until after the employment of detectives to watch him, and obtain the startling evidence in his possession, resulting in a confession to the district attorney? If it is, then the case is one in which the complaint cannot be condemned on demurrer. In an action for defamation, where the words published are of doubtful signification, and capable of being regarded as either libelous or innocent, it is for the jury to say in which sense the language was used. Dexter v. Taber, 12 Johns. 239; Goodrich v. Woolcott, 3 Cow. 231; Schoonoven v. Beach, 23 Wkly. Dig. 348; Patch v. Association, 38 Hun, 368; Garby v. Bennett, 40 App. Div. 163, 57 N. Y. Supp. 853. It is said in one case that, where there is room for the least criticism upon the import of words of doubtful meaning, the question as to what they really mean must be left to the jury. Ex parte Baily, 2 Cow. 479. I think that the article set out in the complaint here falls within the rule laid down in the authorities cited. Different meanings may be ascribed to it, one libelous and the other harmless. This makes a question for the jury, and the complaint cannot be held bad as matter of law.

The judgment should be reversed, with costs, but with leave to the defendants to answer upon the payment of such costs.

CULLEN, HATCH, and WOODWARD, JJ., concur.

GOODRICH, P. J. I dissent on the ground that I cannot discover anything in the article in question which, in the language of section 242 of the Penal Code, defining libel, exposes the plaintiff to "hatred, contempt, ridicule, or obloquy, or which causes or tends to cause any person to be shunned or avoided, or which has a tendency to injure any person, corporation, or association of persons in his or their business or occupation." The article, taken as a whole, does not impress my mind as charging the plaintiff with doing anything offensive to good morals, or within the definition cited.