D'ANDREAS v. NEW YORK PRESS CO.

(Supreme Court, Appellate Division, First Department. June 7, 1901.)

1. NEWSPAPERS—LIBELOUS ARTICLE.
    A newspaper article stating that plaintiff was walking with C.'s wife, when C., the deserted husband, confronted them, and that a fight followed, in which Mrs. C. drew a revolver, and shot her husband, for which she was convicted of murder, and that plaintiff was tried for complicity in the crime, but was not convicted, is libelous per se, since it tended to injure the plaintiff, and hold him up to public obloquy.
2. SAME—QUESTION FOR JURY.
    If the article would not warrant the holding that it was libelous per se, its libelous character was clearly a question for the jury, and hence it was error for the court to dismiss plaintiff's complaint for libel, based thereon.

Appeal from trial term, New York county.

Action by Antonio D'Andreas against the New York Press Company for libel. From a judgment in favor of defendant, dismissing the complaint, plaintiff appeals. Reversed.

The action is for libel, and the article complained of, which was published by the defendant on January 5, 1900, at a time when a Mrs. Cignarale, who had been found guilty of murder, was finally pardoned, is as follows: "Mrs. Cignarale shot her husband in 111th street, near Second avenue, on October 20, 1886. She was walking with Antonio D'Andreas, when the deserted husband confronted them. A fight followed, and D'Andreas was being pummeled severely, when Mrs. Cignarale drew a revolver, and shot her husband. In February, 1887, she pleaded guilty to murder in the second degree, but a new trial was obtained. She was convicted, and sentenced by Recorder Smyth to be executed. D'Andreas was tried for complicity in the crime, but was not convicted." The complaint alleged that these words "were intended to and did falsely and maliciously charge plaintiff with being an accomplice in the murder, * * * and of having committed a felony, and also of having incited, advised, and abetted in the commission of said murder, and also of having committed acts of moral turpitude, which publication and language tend to and do degrade, injure, and disgrace plaintiff, and hold him up to contempt, hatred, and ridicule, and obloquy." Upon the trial the plaintiff testified that he was not present when the shooting occurred, and was not then with Mrs. Cignarale, and there was no fight between him and her husband. It further appeared that six months after the shooting—during which time he was in New York—he was imprisoned, and thereafter tried and acquitted. At the close of the plaintiff's case the trial judge dismissed the complaint, saying, "In my opinion, there is nothing libelous in the article." From the judgment thereupon entered, the plaintiff appeals.

Argued before HATCH, McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

John T. Fenlon, for appellant.
Raymond B. Thurber, for respondent.

O'BRIEN, J. The appellant insists that the article complained of gives rise to the natural inference that plaintiff was the person who was with the woman when she shot her husband; that he was quarreling with the murdered husband; that it was in his defense that the shooting was done; that she had deserted her husband for the plaintiff; that the husband was incensed against the plaintiff, and attempted to beat him; that the wife thought so much more of the plaintiff than she did of her husband that she willing to commit murder for him; that he was an accomplice, and incited her to the murder; and that he was equally guilty with her. Further, he contends that "the article insinuates that the plaintiff was guilty, but it was impossible to convict him." Although the article does not warrant all or such broad inferences, we think its tendency was to injure the plaintiff, and hold him up to obloquy. As said in More v. Bennett, 48 N. Y. 472:

"The test is whether to the mind of an intelligent man the tenor of the article and the language used naturally import a criminal or disgraceful charge."

And in Winchell v. Argus Co., 69 Hun, 354, 23 N. Y. Supp. 650, it was said:

"It is quite true * * * that, when we go beyond well-defined limits, marked by criminal charges as fixed in oral slander, or words actionable per se, we have not the sure guide in determining the limits of what are

libelous publications. But such doubt must be solved by the application of the tests which we have seen consist of whether the libelous words charged tend to diminish the respectability of the plaintiff, and expose him to disgrace, ridicule, and obloquy."

And, as said in Shelby v. Association, 38 Hun, 474:

"As soon as the court has arrived at the conclusion that the publication complained of is one which is calculated to subject the party assailed to any one of the consequences named [scandal or contumely], it becomes its duty to declare the action properly brought, and to maintain it."

We think that the article, though couched in guarded terms, and stating that the plaintiff was not convicted, after trial, of being an accomplice, contains statements sufficient to justify a jury in finding that he was represented as holding a questionable position with a married woman. It is, of course, not libelous to say of a man that he was seen in the street, walking with a married woman; but when, in addition to this, it is stated that while so walking he is "confronted" by the husband, who is angered at meeting them together,—which anger it cannot be assumed was without some cause,—and that the husband thereupon struck the person found walking with his wife, and the latter, in defense, took out a revolver, and shot the husband, we think the fair inference to be drawn from such a statement is that the relations between the third person and the married woman were not entirely innocent, but were such as to excite the jealousy and anger of the husband, and lead the wife, in order to protect plaintiff against the husband's assault, to commit murder. Reading the article as a whole, which, in addition to the incidents mentioned, states that the plaintiff was subsequently arrested, and tried for complicity in the murder, we think it must be held to have been libelous per se. However, if the article would not warrant our going so far, and if we take the view most favorable to the defendant that the language is of doubtful significance, and does not directly charge or insinuate that the plaintiff was guilty of a crime, and is not per se defamatory, then, under the authorities, there was clearly a question for the jury as to the meaning to be attached to the language. As said in Gallagher v. Bryant, 44 App. Div. 527, 60 N. Y. Supp. 844:

"In an action for defamation, where the words published are of doubtful signification, and capable of being regarded as either libelous or innocent, it is for the jury to say in which sense the language was used. * * * It is said in one case that, where there is room for the least criticism upon the import of words of doubtful meaning, the question as to what they really mean must be left to the jury."

See, also, Sanderson v. Caldwell, 45 N. Y. 398, 6 Am. Rep. 105.

So, in this case, if there is any doubt as to whether the words were innocently used or were defamatory, the question should have been left to the jury.

The judgment accordingly is reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.