## LANGTON VS. HAGERTY.

SLANDER: PLEADING.   (1, 3) *When inducement not necessary in complaint.* (2) *Effect of innuendo.* (4) *When answer cures defect of inducement.* (5, 6) *Truth of words charged, or mitigating circumstances, to be proved or submitted to jury, must be pleaded.*

SLANDER: EVIDENCE.   (7–9) *Plaintiff's right to prove facts showing malice. Order of evidence; discretion of court.* (10) *Res gestæ.* (11) *Evidence of defendant's malice, and of plaintiff's bad character — for what purpose admissible.* (12) *Evidence that slander did not affect plaintiff's pecuniary credit.* (13) *Discretion of court as to evidence on collateral issues.*

COURT AND JURY.   (14) *Construction of words charged, for the court.* (15) *Credibility of witness, for the jury.*

REVERSAL OF JUDGMENT.   (9, 16–18) *Error in admitting evidence, refusing instruction, or construing pleading: when not fatal.*

NEW TRIAL.   (19) *When not granted for incompetency of juror.* (20) *Proof of such incompetency.*

Langton vs. Hagerty.

1. In slander, where there is no ambiguity in the words charged, either in respect to their actionable character *per se*, or in respect to the person to whom they refer, no *inducement* is necessary.

2. The *innuendo* cannot extend the meaning of the words charged; its office being only to point their meaning to some precedent matter expressed in the pleading or necessarily understood.

3. The complaint (with due averments of time, place, audience and malicious intent) charges that defendant " spoke, published and declared of and concerning plaintiff, the false, scandalous and defamatory words following, to wit: ' He [meaning the plaintiff] murdered the man [meaning one M. N.], and stole all his money from him, and I saw him do it;' meaning, intending and charging thereby that this plaintiff had been guilty of the crimes of murder and larceny," to plaintiff's damage, etc. *Held*, that, omitting the *innuendoes*, the words charged impute to plaintiff the crimes of murder and larceny, and the complaint is not bad for omitting to state, by way of *inducement*, that M. N. had been killed, etc.

4. Even if the complaint were defective for the omission of such inducement, no advantage could be taken of the defect after the filing of an *answer* which alleges the killing of said M. N. by the plaintiff, and that the words charged were spoken by defendant with reference thereto.

5. In slander, where the truth of the words spoken is not alleged in the answer, defendant cannot prove their truth, nor have that question submitted to the jury; nor can he avail himself of extrinsic facts to mitigate damages, unless they are pleaded.

6. There being no averment in the answer either that the words charged were true, or that the killing of M. N. by plaintiff, if not murder, was manslaughter, there was no error in refusing to submit to the jury the question whether such killing was a justifiable or felonious homicide.

7. In such an action, plaintiff may prove any fact which tends to show that the slanderous words were spoken by defendant maliciously; and this he may do, not only in rebuttal, but before any testimony is introduced by defendant.

8. In this case, if plaintiff claimed that the circumstances which attended the killing of M. N. did not furnish any just ground for a belief that he had been guilty of any crime, he was entitled to prove those circumstances in the first instance, as tending to show *malice* on defendant's part.

9. Even if such testimony should in strictness have been introduced at a later period, by way of rebuttal, its admission in the first instance was probably within the *discretion* of the court; and at least, it not

appearing how defendant could be injured thereby, it is no ground of reversal.

10. It appearing that at the time of such killing, plaintiff, as deputy sheriff, was attempting to arrest M. N., pursuant to a request received by telegraph from the sheriff of a certain county in Michigan, for crimes committed in that state, the telegraphic dispatch containing such request was properly received in evidence, as part of the *res gestæ.*

11. In slander, where the words charged are actionable *per se*, and the communication was not privileged, plaintiff is entitled to recover without proof of defendant's malice; and his recovery cannot be entirely defeated by proof of his own bad character; though these considerations may affect the *amount* of his recovery.

12. There was no error, in this case, in refusing to permit defendant to show that the alleged slanderous words had not injuriously affected plaintiff's pecuniary credit.

13. The admission or rejection of certain testimony as to collateral issues, *held* to be within the *discretion* of the court.

14. The words alleged and admitted by the pleadings clearly charging plaintiff with murder and with larceny or robbery, there could be no error in refusing to charge the jury that he could not recover " if the words spoken were only to the effect that he had killed a man."

15. The question of the *credibility* of a witness is *for the jury;* and the court did not err in refusing to charge that " the testimony of the defendant was entitled to as much weight as that of any other witness."

16. In view of the evidence in this case as to plaintiff's reputation, a refusal to instruct the jury that " if his reputation was so bad that the slanderous charges could not affect it, he could not recover," would not be treated as error, even if such instruction were correct in law.

17. The erroneous admission of evidence is no ground of reversal, where the verdict cannot be supposed to have been affected thereby to appellant's injury.

18. An erroneous construction of the answer as admitting the slanderous words charged, would be no ground of reversal where the uncontradicted evidence proves clearly that they were spoken as charged; nor would an erroneous construction of the answer as not alleging any mitigating circumstances as to a part of the slanderous words be any ground of reversal, where defendant was in fact allowed to introduce all his evidence in mitigation. But in this case the construction of the answer by the circuit court is *held* to be correct.

19. If it satisfactorily appear that a juror who participated in the verdict in a cause still pending, was not competent, the losing party not having waived the objection to such juror by *laches* or otherwise, the

court should set aside the verdict and grant a new trial, if a motion therefor is made in due time.

20. But the mere admissions or statements of the juror himself, made after the verdict is returned, or after it is *made up and sealed*, to the effect that he was not impartial, or was prejudiced against the losing party, are inadmissible to prove the fact, and are not sufficient ground for setting aside the verdict.

APPEAL from the Circuit Court for *Brown* County.

Action for slander. The complaint states five counts or causes of action, charging the speaking of the same words, substantially, but at different times, and in the presence and hearing of different persons. The introductory averments and the innuendoes are the same in each. Hence, a perusal of one count will show the structure of the whole complaint. The first cause of action is as follows: " That on or about the 12th day of October, 1872, at the city of Green Bay in said Brown county, the defendant, wilfully and maliciously designing and intending to injure and degrade this plaintiff in his character, and to bring plaintiff into public infamy and disgrace, wilfully and maliciously spoke, published and declared of and concerning this plaintiff, in the presence and hearing of one N. L. Barber and divers other persons, the false, scandalous and defamatory words following, to-wit: ' He [meaning the plaintiff] murdered the man [meaning one Michael Nehill], and stole all of his money from him, and I saw him do it;' meaning, intending and charging thereby, that this plaintiff had been guilty of the crimes of murder and larceny; that plaintiff was thereby greatly injured in his good name, fame and character, to his damage three thousand dollars."

Each count is separately answered; but, except the reference in each to the number of the count which it purports to answer, the answers are alike. Each contains a general denial of the allegations of the count to which it responds, and, in addition thereto, the following averments: " And for a further answer to the plaintiff's (*first*) alleged cause of action, the defendant avers that before the speaking of the words, ' he mur-

dered the man,' complained of, to wit, on or about the 7th day of December, 1868, at the city of Green Bay, Brown county, in this state, the plaintiff above named did shoot and kill one Michael Nehill, and that whatever was said by the defendant in relation to the killing of the said Michael Nehill as aforesaid, was said to the plaintiff personally, believing the same to be true, and without any malice towards the plaintiff or design to do him injury in his good name, fame, credit or otherwise." The whole answer concludes with a notice applicable to each particular answer, which is as follows: "All of which above facts the defendant will give in evidence on the trial of this action in mitigation of any damage the said plaintiff may by law be entitled to recover therein."

When the cause was called for trial, and a jury was being selected to try the same, each of the persons called was sworn and examined touching his competency as a juror therein, and each of the jurors who were accepted and sworn as such and who rendered the verdict in the cause, testified on such examination that he had never heard of the case, that he knew nothing about it, and was not sensible of any bias or prejudice in favor of or against either of the parties.

Before any testimony was received on the trial, the counsel for the defendant objected to the admission of any evidence under the complaint, for the reason that it fails to state a cause of action against the defendant, in that it states nothing, by way of inducement or otherwise, to show the meaning of the slanderous words alleged to have been spoken by the defendant. The court overruled the objection.

On the trial the plaintiff was permitted, under objection, and before any testimony had been introduced on behalf of the defendant, to testify that he killed Michael Nehill, and to narrate the circumstances under which he killed him. This testimony is to the effect that the plaintiff, then being a deputy sheriff of Brown county, arrested Nehill pursuant to a request received by telegraph from the sheriff of Marquette county, Michigan,

charging him with the crimes of burglary and larceny ; that after such arrest, Nehill started to run from the plaintiff, who called to him to stop and threatened to shoot if he did not stop, but he continued to run, and the plaintiff thereupon fired in the air. What followed is thus stated by the plaintiff : " He turned and shot at me ; I shot at him, and he shot at me again ; I fired at him again, and he fell. I was close to him, and jumped on him. He tried to shoot me, and the ball went through my coat between the vest and arm." Afterwards a large amount of testimony was introduced by both parties on the same subject. The court allowed the dispatch under which the arrest was made, to be read in evidence, against the objection of the defendant ; but the contents thereof are not stated in the case, and only appear by inference.

The jury found for the plaintiff, and assessed his damages at $500. A motion to set aside the verdict and for a new trial was denied by the court, and judgment was duly entered for the plaintiff pursuant to the verdict.

One ground of the motion for a new trial was the alleged misconduct of two jurors. The affidavits of four persons were read, to the effect that on the 17th of April, 1873, they heard one of the jurors say that he knew something about the controversy which would have rendered him a competent witness in the case ; and two of them depose that he represented that such knowledge was adverse to the defendant. Two of the same deponents further swear that they heard another juror say, on the day following, that the plaintiff had done him more good, or had done more for him, than the defendant. Each of the two jurors denies under oath that he made the statement thus imputed to him.

The instructions given to the jury, and those asked and refused, together with all other facts not herein mentioned, but which are essential to the determination of the case, will be found sufficiently stated in the opinion.

The defendant appealed to this court.

*Hudd & Wigman*, for appellant, contended that the complaint is defective in that it contains no allegations by way of inducement showing that one Nehill had been killed and robbed. If Nehill was not killed, but was alive at the time the words were spoken, no action will lie. *Snag v. Gee*, 4 Rep., 16 ; 1 Vin. Ab., 409, pl. 4. If the words charged were, that plaintiff "killed Michael Nehill," etc., it might not be necessary to aver that Nehill was killed (8 Mod., 44 ; Vent., 117) ; but it is otherwise where the slanderous imputation cannot be collected from the words themselves. 1 Starkie on Slander (2d Am. ed.), 393. An *innuendo* can only explain the meaning of the words by reference to facts previously ascertained by proper averments (1 Starkie, 418 ; 2 Salk., 513 ; 1 Ld. Ray., 256 ; 12 Mod., 13 ; 1 Saund., Wm's. ed., 243), and cannot be used to introduce new matter (1 Starkie, 421); nor can it extend the meaning of the words, where there is nothing on the record to explain them. 5 Johns., 220 ; 6 id., 83 ; 7 id., 271. Whether an *innuendo* is a legitimate deduction from the words complained of and the facts alleged as inducement, is for the court to determine. 5 Sandf., 54 ; 1 Code R., N. S., 238. See also 4 Abb. Pr., 446 ; 14 How. Pr., 265 ; *Curtis v. Moore*, 15 Wis., 134 ; *Filber v. Dautermann*, 28 id., 134, 137. 2. If one of the jurors who sat on the trial of the cause was not a legally qualified juror, defendant had a *right* to a new trial. 44 Vt., 672 ; *Schoeffler v. The State*, 3 Wis., 823. If the facts concerning the prejudice and partiality of some of the jurors had been disclosed when they were put upon their *voir dire*, the judge would have had no discretion, but must have set them aside. It was equally his duty to grant a new trial upon those facts being subsequently shown. R. S., ch. 125, secs. 37, 38 ; Hilliard N. T., 141, § 32 ; 2 Salk., 645 ; 3 How. (Miss.), 27 ; 11 Foster, 251 ; 3 Scam., 512 ; 9 Ship., 198; 9 Cal., 298 ; 9 Humph., 411 ; 25 Ga., 499 ; 7 Clarke (Iowa), 287 ; 4 Sneed, 340 ; 1 id., 215. The affidavits of the jurors were not admissible. *Brennan v. The State*, 33 Tex., 266. 3. The admission of evidence

in behalf of plaintiff in the opening of the case, as to the cir-cumstances attending the killing of Nehill, was error; and as, by permitting him to anticipate defendant's line of defense, and get the ear of the jury first with his version of the transaction, colored to suit himself, it naturally tended to influence the jury to defendant's injury, the error is ground of reversal. 13 Barb., 42; 21 id., 530; 27 Me., 35; 3 Term, 749; 11 Wis., 371; 13 id., 37, 332. "The party offering evidence must ren-der the same competent in the order in which, and at the time when, it is tendered." 2 Wis., 210. — Other objections urged by counsel will sufficiently appear from the opinion.

*Neville & Tracy*, for respondent, contended that the evidence in plaintiff's behalf as to the killing of Nehill, though not necessary to a recovery, was admissible as showing express mal-ice on defendant's part, and so bearing directly on the question of damages. Townshend on S. & L., 131; *Viele v. Gray*, 18 How. Pr., 566; *Root v. King*, 7 Cow., 633; *Taylor v. Church*, 8 N. Y., 452; *Bush v. Prosser*, 11 id., 359; *Fry v. Bennett*, 28 id., 327. 2. That there was no error in refusing a new trial. (1) The affidavits of jurors are not admissible to impeach their verdict. *Clum v. Smith*, 5 Hill, 560; *Green v. Bliss*, 12 How. Pr., 428; *Taylor v. Everett*, 2 id., 23; *Dana v. Tucker*, 4 Johns., 487; *Brownell v. McEwen*, 5 Denio, 367; 1 Greenl. Ev., § 252; *Chadbourn v. Franklin*, 5 Gray, 315. Much less can their decla-rations, not made under oath, be received for such a purpose. *St. Martin v. Desnoyers*, 1 Minn., 156–59; *Knowlton v. McMahon*, 13 id., 386–7; 5 Hill, 560. (2) The affidavits used by defend-ant were fully refuted by the affidavits of the two jurors accused. And these were admissible. 4 Johns., 487; 8 Abb. Pr., 141. (3) The alleged statements of the jurors were not such as would render them incompetent. 3. Counsel also cited numerous authorities to sustain the instructions given by the court, and its refusal of those asked by defendant.

LYON, J. I. It is objected that the complaint fails to state

a cause of action because it fails to state anything by way of inducement to show the meaning of the alleged slanderous words. It seems to be claimed that it should be stated in the complaint that one Michael Nehill was killed, and that in a conversation of and concerning the killing of said Nehill, the defendant spoke the words complained of. If the complaint shows that the defendant charged that the plaintiff had committed the crimes of murder and of larceny, it states a cause of action, although it fails to show who was murdered or who was robbed. Otherwise it would not be actionable to say of a man, " He is a murderer," or " He is a thief," unless he who speaks the words also tells whom the accused murdered or robbed, so that the proper inducement may be incorporated in the complaint. There is no such absurd rule of law. If I say of a man falsely, " He is a murderer," I must answer in damages for the slander although I do not name the murdered man, and although the victim of the slander may not know, and may not even suspect, to whom I refer as having been murdered.

If there is a rule of pleading which is settled, it is, that in an action for slander, where the alleged slanderous words are actionable *per se*, and where there is no ambiguity in respect to the actionable quality of the language, or the person whom it concerns, no inducement is necessary.

Here the words are actionable *per se*. They impute to the plaintiff the crimes of murder and larceny, not in ambiguous or equivocal terms requiring the aid of extrinsic facts to explain and point their meaning and significance, but in the most plain, direct and unmistakeable terms. What fact or circumstance can make more clear and explicit the charge, " He murdered the man, and stole all of his money from him ? " Of course, the innuendo cannot extend the meaning of the words, its office being merely to point their meaning to some precedent matter expressed in the pleading or necessarily understood. *Weil v. Schmidt*, 28 Wis., 137. But in this complaint the innuendo that the man whom the plaintiff was accused of murdering, was

Michael Nehill, is unnecessary. Omit the innuendo entirely, and the complaint would be good on demurrer; and most certainly was it sufficient after the answer was interposed, which supplied both *inducement* and *colloquium* by the statements that the plaintiff killed Nehill, and that the slanderous words (if spoken at all) were spoken of and concerning such killing.

II. The next question is, whether the court erred in permitting the plaintiff, in the first instance, to give testimony of the circumstances under which he killed Nehill. Malice is an important element to be considered in fixing or assessing the damages, and it is competent for the plaintiff to prove any fact which tends to show that the slanderous words were spoken by the defendant maliciously. And he may do this, not only by way of rebuttal, but in the first instance, and before any testimony has been introduced by the defendant. The answer to the question whether the words complained of were or were not spoken maliciously, may depend greatly upon the circumstances under which Nehill was killed. Hence, if the plaintiff claimed that those circumstances precluded any just ground for the belief that he had been guilty of any crime, he ought to be permitted to prove them as tending to show the malice of the defendant in imputing to him, in the transaction, the crimes of murder and larceny.

But if such testimony was not admissible, under a strict application of the rules of evidence, except by way of rebuttal, it was probably within the range of the sound discretion of the court to receive it out of its order. It is not apparent how the defendant could have been prejudiced by so receiving the testimony.

No good reason is perceived why the telegram, by virtue of which the plaintiff arrested Nehill, was not properly received as evidence. Indeed, it seems to be conceded that if it was competent for the plaintiff to show the circumstances of the killing of Nehill, the telegram was properly admitted, being part of the *res gestæ*.

III. We now come to consider the rulings of the court in refusing to give certain proposed instructions to the jury, and also to consider the instructions which were given. These extend through nearly thirty folios of the bill of exceptions, and are altogether too voluminous to be here inserted. There is much criticism of these rulings and instructions in the brief of counsel for the defendant; but the objections thereto which demand consideration are not numerous, and may readily be disposed of by the application thereto of a few well-settled general principles of law.

The court refused to charge the jury that if the words complained of were spoken by the defendant without malice and in the belief that they were true, or, if the plaintiff's reputation was so bad that the slanderous charges could not affect it, or if the words spoken were only to the effect that the plaintiff had killed a man, in either case the plaintiff could not recover; also, that the testimony of the defendant was entitled to as much credit as that of any other witness; and also, that it was a question for the jury whether the killing of Nehill was a justifiable or a felonious homicide.

These proposed instructions were all properly refused. The right of the plaintiff to recover does not depend upon the malice of the defendant, the words spoken not being privileged. *Wilson v. Noonan*; * *Servatius v. Pichel*, 34 Wis., 292. Neither can the action be defeated entirely by proof of the bad character of the plaintiff. These are considerations which may affect the amount of the recovery, but cannot defeat the action. And in this connection it is proper to remark that had the instruction concerning the effect of the bad character of the plaintiff contained the correct rule of law, it would still, in view of the testimony on that subject, not have been error to refuse it. Three witnesses were examined by the de-

*The case of *Wilson v. Noonan* was pending on a motion for a rehearing at the date of the present decision, but is reported in this volume, *post*.

fendant concerning the general reputation of the plaintiff, but only two of them gave testimony tending to impeach it, and both of these admitted that they had been at variance with the plaintiff. On the other hand thirteen witnesses, all or most of whom had known the plaintiff long and intimately, testified to his uniform good character. Amongst these we recognize the names of several of the oldest and most highly respected citizens of Green Bay, gentlemen well known to the people of the whole state as of most honorable character and repute. It is seldom that the good reputation of a person thus assailed is vouched for in a manner so satisfactory; and the court would not have gone far wrong had it instructed the jury that the attempted impeachment of the plaintiff's reputation had failed.

Passing to another of the proposed instructions, there was no room for proof that the words spoken merely imputed to the plaintiff the killing of Nehill without criminality, because they unmistakeably impute murder and larceny or robbery. If the defendant used the words in a milder sense, he should have pleaded the fact in mitigation of damages.

As to the weight which ought to have been given to the testimony of the defendant. The jury are the judges of the credibility of the witnesses, the defendant included; and the court could not properly decide for them as to the weight of the defendant's testimony, or that of any other witness in the case.

Under the pleadings it was not a question for the jury whether the killing of Nehill was a justifiable or a felonious homicide. The defendant did not aver in his answer the truth of the words spoken by him; and, failing to do so, he is precluded, by well settled rules of law, from proving that they were true. He is therefore in precisely the same position as though he had expressly admitted in his answer that such killing is not murder. Further, we held in *Wilson v. Noonan*, that extrinsic facts upon which the defendant relies to mitigate the damages, must be stated in the answer, or they will not be

available to him. The answer does not aver that the killing of Nehill, if not murder, was manslaughter. Under the pleadings, all that the court could do was to submit it to the jury to say from the evidence whether, in view of all the circumstances, the defendant could honestly have believed, and whether he did believe, when he spoke the words, that the plaintiff had been guilty of the crimes charged against him. The court so instructed the jury in substance and effect, and properly refused to submit to them the question of the character of the homicide, whether justifiable or criminal.

A very considerable portion of the charge to the jury was in strict accordance with the rules of law above stated, and that portion requires no further notice.

IV. We will now consider the alleged misconduct of the jurors. It satisfactorily appears, that whatever statements were made by the two jurors whose impartiality is assailed, concerning their respective relations to the parties and to the case, were made after the verdict had been agreed upon and sealed, ready for delivery to the court. Nothing remained to be done by the jury but to hand up the sealed verdict, which was done when the court convened the next morning, the same having been agreed upon and sealed after the adjournment of the preceding day. Indeed the alleged statement by one of those jurors (if made at all), must have been made after the verdict was returned and the jury discharged.

The idea that, after a verdict has been rendered, or after it has been agreed upon and sealed, ready to be rendered, any juror may invalidate and destroy it, and drive the court to the necessity of setting it aside and ordering a new trial of the action, merely by admitting that he was prejudiced against the losing party, cannot be entertained or tolerated for a moment. To so hold would be to place every verdict at the mercy of any juror who might be sufficiently corrupt or weak falsely to admit or state that he was not an impartial juror. Parties

recovering verdicts do not hold them, and the rights which may accrue from them, by a tenure so frail and uncertain.

Of course, if it satisfactorily appear to the court that a juror who participated in the verdict was not a competent juror, the losing party not having waived the objection to such juror by laches or otherwise, the court should set aside the verdict and grant a new trial, if a motion therefor be made in due time. But the mere admission of the juror, after verdict, that he was not an impartial juror, does not prove that the juror was incompetent. At best it is but hearsay testimony, and is inadmissible to prove the fact of bias or prejudice. It may be otherwise, however, of declarations made before the trial, if made under circumstances which do not raise the presumption that there has been collusion between the juror and the losing party.

V. There are several other objections (but of minor importance) to the rulings of the court. These can only be considered very briefly. 1. The court refused to permit the defendant to show that the alleged slander had not affected injuriously the pecuniary credit of the plaintiff. The ruling was correct. 2. A witness for defendant who gave testimony tending to impeach the reputation of the plaintiff, admitted on cross examination that he had a difficulty with plaintiff growing out of what he termed " the Bucklin affair." The plaintiff afterwards testified, in explanation of such affair, that, at the instance of the witness, he went to Iowa in pursuit of one Bucklin, who was charged with a crime, and that the matter was arranged. To the question, " Did you compound that felony with Bucklin?" put on behalf of the defendant, the court sustained an objection. It was doubtless within the discretion of the court to permit the question to be answered or to rule it out, and no error can be assigned on the ruling, whether the same were for or against admitting the proposed testimony. 3. The plaintiff, when stating causes of difference between himself and the defendant (which was competent on the question of malice), testified as follows:

" I saw *Hagerty* knock a boy down with a stick," and further, that this was one cause of such trouble.   The defendant moved to strike out the words above quoted, and the motion was denied.   We think that this also was within the discretion of the court.   And if the ruling was technically erroneous, it is difficult to perceive how the defendant could have been injured thereby.   It is incredible that any jury could have been so stupid or so corrupt as to have increased the damages in this action because it had leaked out in the testimony that at some time, they knew not when, and under some provocation, they knew not what, the defendant had committed personal violence upon a boy.   4. The court held that the answer to each count or cause of action contained an admission that the defendant spoke the words, " He murdered the man;" also, that in respect to the words imputing larceny or robbery to the plaintiff, no mitigating circumstances are pleaded.   We are of the opinion that the circuit court construed the answer correctly.   But whether it did or not is not important, in view of the facts that the evidence of the speaking of the words complained of, as charged in the complaint, is uncontradicted, and the defendant was not prevented from proving any circumstance of mitigation.

We find no other exceptions which are deemed of sufficient importance to be stated.   Upon the whole case we think that the judgment ought to be affirmed.

*By the Court.*— Judgment affirmed.