## STATE v. LAWRENCE S. MOTT.

An indictment for libel, setting out a publication of words, libelous *per se*, the innuendo to which, however, points a meaning not general, but restricted, which restricted meaning would not naturally be attributed to the words except by reference to extrinsic facts, not averred in a prefatory statement, will yet be unobjectionable, if the facts necessary to show such meaning appear in the publication itself, so that the restricted meaning attributed to the words may be naturally discovered therein when read in connection with the preceding matter of the publication.

On *certiorari.*

Motion to quash indictment removed by *certiorari* from the Hunterdon Sessions.

Argued at June Term, 1883, before Justices SCUDDER, REED and MAGIE.

For the state, *J. N. Voorhees.*

For the defendant, *E. T. Green.*

The opinion of the court was delivered by

MAGIE, J.   The indictment which defendant moves to quash is for libel, and contains two counts, each setting out a different publication. If either count be good, the motion should be denied. *State* v. *Norton,* 3 *Zab.* 33.

The contention of defendant is that neither count sets out an indictable offence. The point of objection is that the alleged publications are either not libelous in themselves, and

not susceptible of the defamatory meaning attributed to them by the innuendoes, without the knowledge of extrinsic facts, not averred in the indictment, or that the words, if libelous in themselves, have a limited meaning attributed to them, of which they are not susceptible without the knowledge of such extrinsic facts, which are not averred.

By the provisions of section 124 of the Practice act (*Rev.*, *p.* 868,) an alteration in the rules of pleading in civil actions for libel and slander was effected, by which the necessity of prefatory averments of extrinsic facts, showing the defamatory sense attributable to the written or spoken words, is dispensed with. In such pleadings, it is now sufficient to aver that the words were used in a specified defamatory sense.

The rules of pleading in civil actions of this nature, previously in force, were thus expressed in *Hall* v. *Blandy*, 1 *Y. & J.* 480 : " When that which is termed a libel does not necessarily, upon the face of it, import a libel, it is requisite to connect it with certain facts, by way of inducement, in order that, so explained, it may amount to·a libel, and that there may be sufficient certainty that what is therein stated relates to the plaintiff."

These rules have always been, and are now applicable to pleadings in criminal prosecutions for libel. *Whart. C. L.*, § 2605.

Therefore, in an indictment for libel by the publication of words, not libelous in themselves, or not of themselves pointing at the person alleged to be injured, the settled and well-recognized practice has been to aver the facts requisite to be connected with the words, to show their defamatory character, by way of inducement in a prefatory statement; to declare, by a *colloquium*, if necessary, that the publication was of and concerning the person alleged to be injured, and then to point the meaning of the words by innuendoes, the function of which is, as was said by Lord Mansfield, " by reference to preceding matter, to fix more precisely the meaning of it." *Rex* v. *Aylett*, 1 *T. R.* 63.

It is, however, well settled that an innuendo must have

some precedent matter to which it refers. *Chitty C. L.* 875. It can explain only in cases where something already appears on the record, to ground the explanation upon. *Whart. C. L.*, § 2608; *Barham's case*, 4 *Rep.* 20; *Angle* v. *Alexander*, 7 *Bing.* 119; *Hawkes* v. *Hawkey*, 8 *East* 427; *Gompertz* v. *Levy*, 9 *A. & E.* 282; *King* v. *Horne, Cowp.* 672. It cannot extend the meaning of words beyond their natural meaning, unless there is something put upon the record to which the words spoken may be referred, and by which they may be explained in the innuendo. *McCune* v. *Ludlam*, 2 *Harr.* 12. If the plain, natural meaning of the words is libelous, then no innuendo is required; and if an innuendo is used, with respect to words libelous in themselves, and the meaning attributed thereto may be naturally gathered from the words, without other facts, no other facts need be averred. *Rex* v. *Burdett*, 4 *B. & Ald.* 314; *Hoare* v. *Silverlock*, 12 *Ad. & E. (N. S.)* 624; *Crosswell* v. *Weed*, 25 *Wend.* 621.

The first count of this indictment charges defendant with publishing of and concerning one John Carpenter, Jr., a false, scandalous, malicious and defamatory libel. The indictment contains no prefatory statement of facts by way of inducement. It sets out the alleged publication, with innuendoes, as follows:

"The Hunterdon county democracy must admire political filth. They certainly placed an admirable specimen of the corrupt and dirty in politics in the field for state senator, on Saturday. [Meaning that the Hunterdon county democratic party had nominated the said John Carpenter, Jr., for the office of state senator for said county.] John Carpenter, Jr., is a ringster of the worst sort. His [meaning the said John Carpenter, Jr., who then was the Democratic candidate for the election to the office of state senator for said county,] record is black with the work of the bosses. He [meaning the said John Carpenter, Jr.,] has always been in the market. [Meaning that if the said John Carpenter, Jr., should be elected to the office of state senator of said county, he would sell his vote and influence for the passage of improper laws

for a pecuniary consideration.] He will bribe and be bribed. [Meaning that the said John Carpenter, Jr., if elected to the office of state senator for said county of Hunterdon, would, as such senator, receive and give bribes.] The place for John Carpenter, Jr., is Clinton. Trenton doesn't want him. He [meaning the said John Carpenter, Jr., as such state senator,] will disgrace both the legislature and the party. Keep him at home."

Defendant's insistment is that these innuendoes point a meaning to the words which is not capable of being attributed to them without the averment of certain facts, such as that John Carpenter, Jr., was a candidate for the office of state senator for the county of Hunterdon upon the nomination of the Democratic party, &c., which facts are nowhere averred in the indictment.

The innuendoes to which attention is thus called have evidently been inserted without a careful attention to the nature and office of this kind of statement. For example, the first two sentences of the alleged libel read thus: " The Hunterdon county democracy must admire political filth. They certainly placed an admirable specimen of the corrupt and dirty in politics in the field for state senator, on Saturday." These words are declared by the innuendo to mean " that the Hunterdon county Democratic party had nominated the said John Carpenter, Jr., for the office of state senator for said county." It is obvious that the words are entirely incapable of bearing the meaning attributed to them, except on the assumption that John Carpenter, Jr., was an admirable specimen of the sort mentioned, and perhaps the only such specimen in that county, a fact which it is inconceivable that the pleader who drew, or the grand jury who presented this indictment, meant to suggest, and which is certainly not averred therein. The innuendo has, therefore, no precedent matter upon which the attributed meaning can be predicated, and is manifestly vicious.

The next sentence of the alleged libel introduces the name of John Carpenter, Jr. Following, as it does, immediately

after statements that a political party had placed in the field for a certain office a person of certain characteristics, an innuendo that the meaning of the three sentences was that the Democratic party had nominated John Carpenter, Jr., for that office, and that he was charged with being corrupt, &c., would seem to be the natural and proper mode of pleading. But the indictment fails to contain any innuendo pointing the meaning to the person alleged to be injured.

But further analysis of these innuendoes seems unnecessary. In the publication spread out in this count, there is matter plainly libelous. The publication of any written or printed words, respecting any individual, calculated to hold him up to public ridicule, hatred or contempt, constitutes the crime of libel. Ignoring the innuendoes, the following sentences appear: "John Carpenter, Jr., is a ringster of the worst sort. His record is black with the work of the bosses. He has always been in the market. He will bribe and be bribed." The first clause of the last sentence is, in my judgment, at least libelous *per se*. For, while it may, perhaps, be impossible, without the averment of some explanatory facts, to understand what a "ringster" is, or what "bosses" are, or what obnoxious charge is made by the words, "always in the market," and while, to aver that one will be bribed may, perhaps, require the further averment that the person charged was an officer or voter capable of being thus corrupted, yet, with respect to the charge, "he will bribe," it is apparent that it is of a criminal disposition, which, however lax public opinion may be on the subject, must, in the eye of the law, be calculated to hold the person charged with it up to public obloquy and contempt.

These words have, naturally, a general meaning, and impute to the person charged a disposition to bribe in general. By the innuendo, the meaning attributed to them is restricted thus: "Meaning that the said John Carpenter, Jr., if elected to the office of state senator for said county of Hunterdon, would, as such senator, receive and give bribes."

If these words comprised all the publication, and their

meaning was thus limited by an innuendo, without a prefatory averment of facts upon which such an innuendo could rest, a question would arise, not, in my judgment, easy of solution. When words are libelous in themselves, and the innuendo is repugnant to their natural meaning, or is more extensive than the natural meaning, and so unwarranted by the words, it has been held that the innuendo may be rejected. The same view has been taken when the innuendo unnecessarily introduces new matter. *Barrett* v. *Long,* 16 *Eng. L. & E.* 1; *Harvey* v. *French,* 1 *Cr. & M.* 11; *Roberts* v. *Camden,* 9 *East* 93; *Archbishop, &c.,* v. *Robeson,* 5 *Bing.* 17; *Commonwealth* v. *Snelling,* 15 *Pick.* 321; *Wakley* v. *Healey,* 7 *C. B.* 591; *Mix* v. *Woodward,* 12 *Conn.* 262; *Beirer* v. *Bushfield,* 1 *Watts* 23; *Shultz* v. *Chambers,* 8 *Watts* 300; *Langton* v. *Hagerty,* 35 *Wis.* 150; *Lewis* v. *Hudson,* 44 *Ga.* 568; *Gabe* v. *McGinnis,* 68 *Ind.* 538. But if the words are capable of two senses, and the innuendo attributes one of them, or if the innuendo is good on its face, it cannot be rejected or ignored. *Williams* v. *Stott,* 1 *C. & M.* 675; *Smith* v. *Carey,* 3 *Camp.* 461; *Sellers* v. *Till,* 4 *B. & C.* 655; *Woolnoth* v. *Meadows,* 5 *East* 463. Here the innuendo is not insensible or repugnant, but it attributes a restricted meaning, capable of being attributed to the words, if published in view of certain facts, such as a supposed candidacy for the office of state senator. The question then would be whether such an innuendo could be ignored, or whether, on a traverse of this indictment, it must be determined that the written words, in fact, bear the attributed meaning without the averment of such facts, or the proof of them, for it seems that, unless averred, they cannot be proved. *Van Vechten* v. *Hopkins,* 5 *Johns.* 211.

Fortunately, we are not called upon to decide this question upon this motion to quash. The words now under consideration do not stand alone. They must be considered together with the preceding words. Read thus, the publication and the innuendo in question are as follows: "The Hunterdon county democracy must admire political filth. They cer-

tainly placed an admirable specimen of the corrupt and dirty in politics in the field for state senator, on Saturday. John Carpenter, Jr., is a ringster of the worst sort. His record is black with the work of the bosses. He has always been in the market. He will bribe and be bribed. [Meaning that the said John Carpenter, Jr., if elected to the office of state senator for said county of Hunterdon, would, as such senator, receive and give bribes."]

What meaning would any ordinarily intelligent reader gather from the text of this publication? As was said by Coleridge, J., in *Hoare* v. *Silverlock, ubi supra :* "We ought to attribute to a court and jury an acquaintance with ordinary terms and allusions, whether historical or figurative or parabolical." Applying this principle, I think any intelligent man, reading so much of the publication, would paraphrase it substantially thus: "The Hunterdon county democracy—*i. e.*, the Democratic party of that county—have placed in the field—*i. e.*, have nominated for election—for state senator, John Carpenter, Jr." When the publication proceeds to declare that "he will bribe," the reader would at once connect the statement with the person alleged to have been nominated. When it adds that "he will be bribed," the reader would discover in the words, taken together, the meaning attributed in the innuendo, viz., that if the person so nominated should be elected, he would, in that office, receive and give bribes. The words have a general and a restricted meaning; the restricted meaning has been selected by the pleader, and may be discovered therein. The innuendo is, therefore, one that arises from the words without the necessity of averring or proving extrinsic facts.

In this view, it is immaterial whether the person charged was, in fact, nominated. A publication alleging, though falsely, that one was nominated for office, and declaring that, if elected, he would misconduct himself, would be calculated to hold him up to public contempt, and so would be libelous.

My conclusion therefore is, that there can be extracted from the peculiar charges of this count, at least this one charge, on-

which a conviction, if obtained, must be sustained. It may be that other charges can, in the same way, be found to be good. But it is unnecessary to examine farther, for this single good charge is sufficient to sustain this count.

The first count being sustained, it is unnecessary to examine the second.

The motion to quash must therefore be denied.