## WILLIAM S. LAUDER v. EVAN M. JONES.

Opinion filed December 7, 1904.

**When Language Claimed to Be Libelous Is Susceptible of Two Constructions, the Jury Are to Determine Whether Used in an Innocent or Defamatory Sense.**

1. Where the language of an alleged libel is fairly susceptible of a construction which renders it defamatory, and therefore actionable, even though it is also susceptible of a construction which would render it innocent, the complaint states a cause of action, and it is for the jury to determine whether the words were used in an innocent or defamatory sense.

**Defamatory Charge Need Not Be Made in Direct Terms — Not Less Actionable if Made Indirectly.**

2. It is not necessary, to render words defamatory and actionable, that they shall make the defamatory charge in direct terms. It may be made indirectly, and is not, for that reason, the less actionable.

**What Constitutes Libel.**

3. Under the statute of this state (section 2715, Rev. Codes 1899), every false and unprivileged publication by writing, "which exposes any person to hatred, contempt, ridicule or obloquy or which causes him to be shunned and avoided * * *" is libelous and actionable.

**Matter in Issue Held Libelous.**

4. The alleged libelous publication involved in this case is in the form of an affidavit purporting to have been made by one Wendall of and concerning the plaintiff in his judicial capacity, and published by the defendant by delivering copies thereof to divers persons. A copy of the affidavit is set out in full in the opinion. *Held,* that said writing is defamatory and actionable in this: That (1) it directly charges the plaintiff with a willful refusal to perform a legal duty, and indirectly charges that such refusal was from corrupt motives; (2) it fairly charges the plaintiff with betraying confidential communications to an alleged criminal for the purpose of shielding him; and (3) by insinuation it charges that the plaintiff was privy to a corrupt agreement, whereby, for a money consideration, protection was extended to law violators.

**Under Section 5289 Truth and Mitigating Circumstances May Be Pleaded.**

5. Under section 5289, Rev. Codes 1899, the defendant in a libel case is authorized to plead, as a complete defense, the truth of the matter charged to be defamatory; and also to plead any mitigating circumstances to reduce the amount of damages, "and whether he

prove the justification or not he may give in evidence the mitigating circumstances."

## Truth of Alleged Defamatory Matter and Mitigation Must Be Pleaded.

6.   The truth of the alleged defamatory matter, as well as facts in mitigation, are new matter, and, to be available as a defense under section 5289, Rev. Codes 1899, must be pleaded in the answer.

## Unless Pleaded, Truth of Alleged Defamatory Matter and Mitigation Cannot Be Proven.

7.   It was not error, therefore, for the trial court in this case, there being no answer by way of justification or in mitigation, to exclude evidence offered to prove the truth of the statements contained in the libelous affidavit.

## Damages Not Excessive.

8.   This case is one where punitive as well as compensatory damages are allowable, and the question of the amount is peculiarly within the province of the jury.   We are unable to say that the amount of the award, $7,000, is so large that it shows that the jury acted under the influence of passion and prejudice.

## ON REHEARING.

## Malice Essential to Recovery — Damages — Privileged Communication.

9.   Malice, either express or implied, is essential to a recovery in all actions for defamation.   When a defamatory charge is made upon an unprivileged occasion, the law implies malice for the purpose of sustaining the action and the recovery of compensatory damages, but when the occasion is privileged, the publication is presumed to have been made in good faith, and the burden is on the plaintiff to prove that it was made with actual malice.

## Former Utterances on Same Subject Matter, But Not a Distinct Calumny, May Be Offered to Prove Malice.

10.   For the purpose of showing actual malice in publishing a libel, the plaintiff may prove that prior to the commencement of the action defendant published the same words, or similar words relating to the same subject matter, and imputing the same general charge as that sued upon, but may not introduce evidence which merely tends to show general malice, or to show the publication of a distinct calumny.

## Matter Uttered in Judicial Proceedings Privileged.

11.   The testimony of a witness in a judicial proceeding, which is pertinent to the issues, cannot be made the subject of an action for defamation. . The occasion is privileged, and the exemption of the witness for liability for his words is absolute.

**Good Faith Presumed in Privileged Utterances.**

12. The occasion being privileged, the law presumes that the statements of the witness are made in good faith and without malice.

**Evidence.**

13. "As bearing upon the question of the malice of the defendant in publishing the libel," which is the subject of this action, the plaintiff introduced in evidence at the trial of this case, over defendant's objection, a certain affidavit which the defendant had previously made in a proceeding in this court, the substance of which is set forth in the opinion. *Held* error, for two reasons: (1) The statements contained in it do not relate to the subject matter of the alleged libel; (2) having been made upon a privileged occasion, they are presumed to have been made in good faith. Further, its admission was highly prejudicial, for which a new trial must be granted.

**Truth of Privileged Defamatory Statement Must Be Alleged.**

14. The falsity of a defamatory charge is always presumed, and the defendant who relies upon the truth as a defense must plead it, and this is true as to defamatory statements made upon privileged occasions.

Appeal from District Court, Richland county; *Cowan,* J.

Action by William S. Lauder against Evan S. Jones. Judgment for plaintiff, and defendant appeals.

Reversed on rehearing.

*Charles E. Wolfe* and *Guy C. H. Corliss,* for appellant.

The office of the inducement is to set out the circumstances, and of the colloquium to show that the words were spoken with reference thereto. Townshend on Slander and Libel, sections 335, 336, 337; Sturtevant v. Root, 27 N. H. 69; Com. v. Child, 13 Pick. 198; 13 Enc. Pl. & Pr. 49-54 and 32-36.

The defendant must have made a defamatory charge to render himself liable, and it is not sufficient that persons hearing or reading the statement of facts, from which a good or bad inference might be drawn, see fit to draw a prejudicial one. Simons v. Burnham, 60 N. W. 476; Brettun v. Anthony, 103 Mass. 37; Goodrich v. Hooper, 97 Mass. 1; York v. Johnson, 116 Mass. 482; Young v. Cook, 144 Mass. 38, 10 N. E. 719; Boss v. Tobey, 2 Pick. 320; Jones v. Diver, 22 Ind. 184; McFadin v. David, 78 Ind. 445.

In every instance where it has been held that defendant slandered the plaintiff by indirection, the words, in the light of the circumstances, conveyed the meaning of a derogatory charge, and not mere

statements of fact, consistent with plaintiff's upright conduct, but from which some minds might possibly draw a prejudicial inference.  Gorham v. Ivers, 2 Wend. 534; Simons v. Burnham, 60 N. W. 476; MacDonald v. Mail Printing Co., 32 Ont. Rep. 163; Nevill v. Fine Art & General Ins. Co., L. P. App. Cases, 68.

When a man is a candidate for a public office, conferred by the election of the people, any elector may discuss his fitness for office, and truthfully communicate to other electors any facts within his knowledge concerning the candidate's character or conduct, and express his opinion thereon, so long as he states as facts only the truth and as opinion only honest belief; but the publication of falsehoods against the character of the candidate, as, for instance, charge imputing to him a criminal offense, whether the charges relate to the candidate's prior official conduct or not, does not come within the domain of a privileged communication.  18 Am. & Eng. Enc. Law, (2d Ed.) 1042; Jarman v. Rea, 70 Pac. 216; Post Pub. Co. v. Hallam, 59 Fed. 530.

It is always competent, in the interests of the defendant, for the court to decide, in a proper case, that the words are not defamatory, and refuse to submit the question to the jury.  Capital & Counties Bank v. Henty & Sons, 8 App. Cas. 741; Heller v. Pulitzer, 153 Mo. 213, 54 S. W. 459.

It is not the intention of the speaker or writer or the understanding of any particular hearer or reader that is to determine the actionable quality of the words.  18 Am. & Eng. Enc. Law (2d Ed.) 977; Snell v. Snow, 13 Metc. 278; Gribble v. Pioneer Press Co. 37 Minn. 277, 34 N. W. 30; Callaham v. Ingran, 122 Mo. 355; Pittsburgh, etc., R. Co. v. McCurdy, 144 Pa. 544; Thompson v. Lewiston Daily Sun Pub. Co., 91 Me. 203; Reid v. Providence Journal Co., 20 R. I. 120.

*W. H. Redmon, Purcell & Bradley, J. A. Dwyer* and *F. M. Nye,* of counsel, for respondent.

Even though writings do not charge crime and would not be libelous if spoken, they are libelous if tending to expose any persons to public hatred, contempt, ridicule, aversion or disgrace, or to bring them into obloquy, or which reflect upon their character, or lower them in public estimation.  Rev. Codes, 2715; Townshend on Slander and Libel, 76-77; Newell on Libel and Slander, 32, 3-4-5; St. James Military Academy v. Gaiser, 28 L. R. A. 667;

Weston v. Grand Rapids Pub. Co., 87 N. W. 258; Culmer v. Canby et al., 101 Fed. 195; White v. Nicholls, 3 How. 266, 11 L. Ed. 591; Davis v. Hamilton, 88 N. W. 744; State v. Shippman, 86 N. W. 431; Schenk v. Schenk, 20 N. J. Laws, 208; Dixon v. Allen, 11 Pac. 179; Bettner v. Holt, 11 Pac. 713; Landing v. Carpenter et al., 9 Wis. 540; Stewart v. Minn. Tribune Co., 41 N. W. 457; Allen v. News Pub. Co. 50 N. W. 1093; Buckstaff v. Viall, 54 N. W. 111; Schomberg v. Walker, 64 Pac. 290; Byram v. Aikin, 67 N. W. 807; Bradley v. Cramer, 59 Wis. 309, 18 N. W. 268; Cary v. Allen, 39 Wis. 481; Bergman v. Jones, 94 N. Y. 51; Shattuck v. McArthur, 25 Fed. 133.

Courts will construe a libelous publication in its ordinary and popular sense. Hotchkiss v. Olmstead, 37 Ind. 74; Com. v. Child, 30 Mass. 205; Newell on Libel and Slander, section 31, page 264; section 42, page 268; World Pub. Co. v. Mullen, 61 N. W. 108; Simons v. Burnham, 60 N. W. 476; Ewing v. Ainger, 55 N. W. 996; Pokrok Zapadu Pub. Co. v. Ziskovsky, 60 N. W. 358; Post Pub. Co. v. Hallan, 59 Fed. 530; Truman v. Taylor, 4 Ia. 424; Bradley v. Cramer, 59 Wis. 309, 18 N. W. 268; Bettner v. Holt, 11 Pac. 713.

Insinuations by expressing belief or opinions are as libelous as though the charge was made direct. Waters v. Jones, 29 Am. Dec. 261; Nye v. Otis, 8 Mass. 132; Simmons v. Holster, 13 Minn. 249; Bee Pub. Co. v. Shields, 94 N. W. 1029; Republican Pub. Co. v. Miner, 34 Pac. 485; Brewer v. Chase, 80 N. W. 575; Funk v. Beverly, 112 Ind. 190, 13 N. E. 573.

It is immaterial that the defendant did not mean to libel the plaintiff. Taylor v. Hearst, 40 Pac. 392; McAllister v. Detroit Press Co., 43 N. W. 431; Whiting v. Carpenter, 93 N. W. 926; Berry v. Massey, 104 Ind. 486, 3 N. E. 942; McKinley v. Robinson, 20 Johns, 351; Massuere v. Dickens, 34 N. W. 349; Curtis v. Mussey, 6 Gray, 291; Wynne v. Parsons, 57 Conn. 73.

To entitle the defendant to prove the truth of the charge as a defense, the specific facts upon which it rests must be pleaded. The answer must be as broad as the charge, so that the plaintiff may know exactly what he has to meet. Fry v. Bennett, 5 Sandf. (N. Y.) 69; Newell on Libel and Slander, 651-656; Townshend on Slander and Libel, 352-362; 13 Enc. Pl. & Pr. 81 to 87; 32 Century Digest, 2167; VanNess v. Hamilton, 19 Johns, 349; Fidler v. Delevan, 20 Wend. 57; Billings v. Waller, 28 How. Pr. 97; Fenster-

maker v. Tribune Pub. Co. 43 Pac. 112; 31 Am. Rep. 757; Amos v. Stockert, 34 S. E. 821; Summer v. Brewyn, 52 Ind. 140; Knott v. Stoddart, 38 Vt. 25; Thrall v. Smiley, 9 Cal. 529; Williams v. Fuller, 94 N. W. 118.

In an action for libel, evidence of the truth of the publication can be received only when the defendant in his answer has set up the truth of the publication as a defense. Newell on Libel and Slander, 790; Sheehan v. Collins, 71 Am. Dec. 271; Sweeney v. Baker, 13 W. Va. 158; 31 Am. Rep. 757; Burke v. Mascarish, 22 Pac. 673; 13 Enc. Pl. & Pr. 78, 75 and 79; Reiley v. Timme, 53 Wis. 64, 10 N. W. 5; Wilson v. Noonan, 35 Wis. 322; Langton v. Hagerty, 35 Wis. 150.

When no justification is pleaded, the falsity of the slander or libel is admitted, and its falsity need not be proved. Burke v. Mascarich, 22 Pac. 673; Jones v. Townshend, 58 Am. Rep. 676, 21 Fla. 431; Shehan v. Collins, 20 Ill. 325, 71 Am. Dec. 271; Pokrok Zapadu Pub. Co. v. Ziskovsky, 60 N. W. 358; Hartranft v. Hesser, 34 Pa. 117; Continental Nat. Bank v. Bowdre, 92 Tenn. 723, 23 S. W. 131; Cooley on Torts, 207; Republican Pub. Co. v. Miner, 20 Pac. 345.

It is for the court to decide whether a publication is capable of the meaning ascribed to it by the innuendo, and for the jury to decide whether such meaning is truly ascribed. 13 Enc. Pl. & Pr. 55; Ayres v. Toulmin, 41 N. W. 855; Royce v. Maloney, 58 Vt. 437, 5 Atl. 395; Singer v. Bender, 64 Wis. 169, 24 N. W. 903; Price v. Conway, 104 Pa. St. 340; Newell on Libel and Slander, section 34, pages 618, 619 and 629; Krause v. The Sentinel Co., 19 N. W. 384; Newell on Libel and Slander, 603, 609.

The term colloquium signifies an averment that there was a conversation or discourse on the part of the defendant which connects the slander with the plaintiff, his office, profession or trade. Newell on Slander and Libel, 613; Starkey on Slander, 209; Stoll v. Houde, 34 Minn. 193, 25 N. W. 63; Section 5288, Rev.Codes 1899.

While the proposition that publications concerning a candidate for public office and public officers are privileged, as against the proposition, see the following: Bronson v. Bruce, 26 N. W. 671; Wheaton v. Beecher, 33 N. W. 503; Belknap v. Ball, 47 N. W. 674; Smith v. Burrus, 13 L. R. A. 59; Mattice v. Wilcox, 147 N. Y. 652, 42 N. E. 270; Upton v. Hume, 33 Pac. 810; Bailey v. Kalamazoo Pub. Co., 40 Mich. 251; Burke v. Mascarich, 22 Pac.

673; Jones v. Townshend, 58 Am. Rep. 214; Eikhoff v. Gilbert, 83 N. W. 110, 51 L. R. A. 451; Banner Pub. Co. v. State, 57 Am. Rep. 214; Coffin v. Brown, 55 L. R. A. 732; Bee Pub. Co. v. Shields, 94 N. W. 1029.

It was not error to permit plaintiff to testify: "I am a married man and have a family." In an action for slander or libel it is proper, as bearing on the question of damages for plaintiff to show his whole environment, domestic, social, professional or business. Enquirer Co. v. Johnson, 72 Fed. 443; Rhodes v. Naglee, 6 Pac. 863; Dixon v. Allen, 11 Pac. 179; Cahill v. Murphy, 30 Pac. 195; Barnes v. Campbell, 60 N. H. 27; Enos v. Enos, 135 N. Y. 609, 32 N. E. 123; Klumph v. Dunn, 66 Pa. 141, 5 Am. Rep. 355; Suth. on Dam. p. 259, section 1210; Id. p. 2599, section 1214; Bolton v. O'Brien, 16 L. R. Ir., 97, 110.

The damages were not excessive. Maclean v. Scripps, 52 Mich. 214; Maloy v. Bennett, 15 Fed. 371; Pame v. Rouss, 61 N. Y. S. 705.

To be privileged, a publication must be made in good faith and upon probable cause. Hebner v. Gt. Northern Ry. Co., 80 N. W. 1128; Printing & Pub Co. v. Schuck, 98 Fed. 925; Smedley v. Soule, 84 N. W. 63; Davis v. Wells, 60 S. W. 566.

A communication, though privileged, will be actionable if actuated by express or actual malice. White v. Nicholls, 44 U. S. (3 How.) 266, 11 L. Ed. 591; Elam v. Badger, 23 Ill. 498; Cook v. Hill, 5 N. Y. Sup. Ct. 341; Carpenter v. Bailey, 53 N. H. 590; Blumhardt v. Rohr, 70 Md. 328; Newell on Libel and Slander, 480, 505, 535; Bradley v. Heath, 12 Pick. 163.

Under the Code, and in some jurisdictions under a special statute, privilege must be especially pleaded. 13 Enc. Pl. & Pr. 88; Hess v. Sparks, 44 Kan. 470, 25 Pac. 580; Goodwin v. Daniels, 7 Allen. 61; Comerford v. West End St. Ry. Co. 164 Mass. 15, 41 N. E. 59; Fresh v. Cutter, 73 Md. 87.

## ON REHEARING.

*Chas. E. Wolfe* and *Guy C. H. Corliss,* for appellant.

Privileged communications which cannot themselves form the basis of an action for slander are not admissible for the purpose of showing malice in other communications. Shinglemeyer v. Wright, 50 L. R. A. 129; Throckmorton v. Evening Post Pub. Co., 35 N. Y. App. Div. 396.

The affidavit filed in the Supreme Court by the defendant Jones in another action was inadmissible. Without attempting to prove its falsity or without any evidence that it was maliciously made, and against the presumption that, as a witness he was acting truthfully and in good faith, the affidavit was admitted as proof of malice on the part of the defendant Jones. Such proof is privileged and inadmissible, and the privilege is absolute. Hinickel v Vonlif, 69 Md. 179, 14 Atl. 500, 17 Atl. 1056; 9 Am. St. Rep. 413; Hoor v. Wood, 3 Metc. 193; Liles v. Garter 42 Oh. St. 631, Hutchinson v. Lewis, 75 Ind. 55; Jacobs v. Cater, 92 N. W. 397; Scougale v. Sweet, 82 N. W. 1061.

Where a publication qualifiedly privileged is admitted by the defendant in a libel suit, the burden of proof is on the plaintiff to show not only the falsity but the malice of the publication. Gattis v. Kilgo, 38 S. E. 931; Hume v. Kusche, 87 N. Y. Supp. 109; Edwards v. Chandler, 14 Mich. 471.

*W. H. Redmon, J. A. Dwyer, Purcell & Bradley,* and *F. M. Nye,* for respondent.

The only protection that a witness has is, that an action of slander or libel cannot be maintained against him founded on his testimony. Davis v. Starrett, 97 Me. 568; 55 Atl. 516.

Anything defendant ever said or did with reference to the plaintiff may be urged as evidence of malice. It is difficult to say what possible evidence is inadmissible on this issue. Newell on Slander and Libel, section 41, p. 336; 18 Am. & Eng. Enc. Law (2d Ed.) 1019; Whittemore v. Weiss, 32 Mich. 348; Price v. Eastwood, 45 Ia. 640.

Separate publications made concerning plaintiff, which are not themselves actionable, are admissible in a suit for libel. If they are not actionable, it seems that they are still admissible whenever the question of malice in fact is to be left to the jury. McDermott v. Evening Journal, 43 N. J. Law, 488; Ransom v. McCurley, 31 N. E. 119; Preston v. Prey, 27 Pac. 533; Ellis v. Whitehead, 54 N. W. 752; Fowles v. Bowen, 30 N. Y. 20.

Where the defendant shows circumstances that furnish occasion for a privileged communication, the plaintiff may rely upon the presumption of the falsity of the charge made against him, and if he shows actual malice and want of good faith in the defendant, he need not assume the burden of proving the falsity. 18 Am. & Eng.

Enc. Law (2d Ed.) 1049; Atwater v. Morning News Co., 34 Atl. 865; Newell on Slander and Libel, 325; Billet v. Times Dem. Pub. Co., 50 L. R. A. 62.

YOUNG, C. J. Action for libel. The jury returned a verdict for $7,000 in plaintiff's favor. Defendant made a motion for new trial. This appeal is from the order overruling the same. The motion for new trial was made on a statement of case in which defendant specified 110 alleged errors as grounds for the motion. The same errors, and all of them, are assigned in appellant's brief as grounds for reversing the order appealed from. Only a portion of them, however, are supported in the body of his brief "with reasons and authorities," as required by rule 14 of this court (91 N. W. viii), and are therefore deemed to have been aban- doned. The alleged defamatory writing is in the form of an affidavit, which purports to have been made by one Elmer L. Wen- dall. The plaintiff claims that the defendant published this affidavit by exhibiting it, and by delivering copies thereof, personally and by mail, to divers persons. A copy of the affidavit is set out in the complaint, and in a number of innuendos the plaintiff places his interpretation upon the alleged defamatory publication.

The complaint alleges that the plaintiff is now and for more than twenty-one years has been a resident of Richland county in this state, and that during the last twelve years he has been and now is the dis- trict judge of the Fourth Judicial District; that in the months of April, May, June and July, 1902, the defendant, with intent to injure the plaintiff in his good name and fame as a man and citizen, and as a judge, wickedly and maliciously wrote, printed and published, and caused to be written, printed and published, of and concerning the plaintiff, the following false, malicious, defamatory and unprivileged libel, to wit (for the sake of brevity the innuen- does are omitted) :

"This is a copy of affidavit sent to Rev. F. Frank Hunter of Fairmount, N. D., by the Rev. E. L. Wendall, of Montrose, S. D., with the request that it be published. Refer to either of these gentlemen. 'State of South Dakota, County of McCook—ss. Per- sonally appeared before me, W. B. Phelps, a notary public of the state of South Dakota, residence in the county of McCook, in the village of Montrose, in said state of South Dakota, the undersigned deponent, Elmer Lincoln Wendall, personally known to me as a resident of said village of Montrose, in said county of McCook,

in said state of South Dakota, on this 11th day of April, in the year of 1902, and deposeth as follows: On the 17th day of April, in the year of our Lord 1900, I was transferred by Bishop C. C. McCabe, of the Methodist Episcopal church, from the Illinois conference of the said church, and on the 19th day of April Bishop McCabe appointed me to the pastorate of the Methodist Episcopal church at Lidgerwood, North Dakota, and at the close of the conference I proceeded to the field which the bishop had appointed me, where I had been acting as pastor for nearly two months previous to said appointment. At this time there were at least ten places in the village of Lidgerwood that were commonly reported to be places where liquor was sold in defiance of the laws of the state of North Dakota. One of the most notorious of these resorts was conducted in the block of wooden buildings situated on Main street of the village, known as the "Maxwell block," and said to be the property of one Ralph Maxwell. During the summer of 1900 I collected a sum of money amounting to something like sixty dollars from the business men of Lidgerwood. All of whom were asked to contribute did so. They contributed with the understanding that I was not to reveal their names, and I have kept that pledge sacredly ever since. The State Enforcement League sent a detective by the name of Edwards to Lidgerwood, and this man worked up evidence against seven different places located in the village of Lidgerwood in the county of Richland and state of North Dakota. These places were the places in Maxwell's block on Main street; the house of ill fame conducted by Maxwell west of town in his pasture; the creamery conducted by Ralph Maxwell in the northwestern part of the town near the track of the Minneapolis, Sault Ste. Marie R. R.; the drug store conducted by Mat Londa, and the Columbia restaurant by Mrs. Ingebred Berg. All of these places were conducted on Main street except the house of ill fame and the creamery. The said Edwards, after purchasing intoxicants at all of the above-mentioned places, proceeded to the city of Wahpeton, in said county of Richland and state of North Dakota, and in the presence of competent judicial officers swore out search warrants, describing accurately the location of the premises to be searched, and also made affidavit to the fact that he had obtained or procured intoxicating liquors on the above described premises. [Innuendo.] These papers were placed in the hands of Daniel Jones, Esq., for service, who was at that time

deputy sheriff of Richland county, North Dakota. Soon after this the said Daniel Jones was taken sick with typhoid fever, and was for a period of six weeks unable to attend to any business whatever. On his recovery Mr. Jones made arrangements to serve the papers above mentioned. On or about the 15th day of November, 1900, the said Daniel Jones, Esq., in the city of Ellendale, in the county of Dickey, in the state of North Dakota, did personally apply to Judge Lauder of that judicial district, for the purpose of obtaining his signature to the papers, which was necessary before they could be served. This application I have been assured by Mr. Jones was made in private, Mr. Guy Divet, who was at that time Judge Lauder's private secretary, being one of the three persons present. Judge Lauder refused to sign the papers, alleging that Mr. Jones was incompetent and untrustworthy. This interview occurred some time during the morning of, or about, the 15th day of November, 1900. I well remember that a large quantity of beer in kegs was removed from Maxwell's property on Main street to property not described in the papers on the afternoon of the same day that Daniel Jones made application to Judge Lauder to sign the papers. The removal of beer to property not described in the papers above mentioned, and therefore not subject to search, would defeat the prospect of the prospective raid. The inference that might be drawn from the above-mentioned facts are that some one must have informed Mr. Maxwell that the papers were out, describing his property and calling for a search of said property. The Sunday afternoon after the above-mentioned removal of the beer, the above-mentioned house of ill fame, situated as above described, caught fire in a mysterious manner, and was entirely destroyed. The beer at the cold storage plant in the creamery was removed in the night to a cellar of another dwelling owned by Maxwell on some other property not described in the above-mentioned papers. [Innuendo.] When I learned that Judge William Lauder, of the Fourth Judicial District, had refused to sign the papers above mentioned, I wrote a letter to his honor, calling his attention to the fact that under the law and statute he had no discretion in the matter, but must sign such papers when presented. Judge William Lauder replied to this without squarely meeting the issue. His honor had a great deal to say about the bad morals of the family of which the above-mentioned Jones is an honored member. His honor finally said that he would sign the pa-

pers if they were placed in the hands of some one in whom he (Lauder) could place confidence. [Innuendo.] About a week after I received this I was in the office of Joseph Morrow, a reputable lumber dealer in the village of Lidgerwood. The said Joseph Morrow, Esq., told me in confidence that Mr. Maxwell had called him into his (Maxwell's) office, and had exhibited to the astonished gaze of said Joseph Morrow an exact verbatim copy of my private and confidential letter to Judge William Lauder above mentioned. Mr. Joseph Morrow made this statement to warn me that the above-mentioned Ralph Maxwell had a most complete system for obtaining the information necessary for the protection of his business. [Innuendo.] I at once returned to my house and sat down at my study table and wrote a letter to Judge William Lauder above mentioned, and called his honor's attention to the fact that a man of integrity, a democrat in politics, had seen in Ralph Maxwell's possession a verbatim copy of a private letter written to his honor. I told his honor that I could not believe that he (Lauder) was such a reprobate guilty of such an act of treachery as the above-mentioned statement personally related to me by the above-mentioned Joseph Morrow would imply, but that I feared that some person was betraying his (Lauder's) confidence. I waited one week for a reply to this letter and none came. Then I wrote to Judge William Lauder again, and told him that if he did not reply to this second letter in a reasonable time that I would publish the above-mentioned statement in one of the county papers. This threat was effective, and Judge Lauder, above mentioned, replied to the letter, saying that he knew nothing about Ralph Maxwell having in his possession a private letter which I, the undersigned deponent, had addressed to him, Judge William Lauder. The denial was a rather weak affair, in my opinion. Mr. Joseph Morrow, above-mentioned, afterwards assured me that he saw in Ralph Maxwell's office in his block in the city of Lidgerwood an exact and verbatim copy of my second letter to Judge William Lauder, above mentioned. In the first week in January, I, the undersigned deponent, met the said Judge William Lauder on the train while on my way to Aberdeen, South Dakota. The judge introduced himself to me, and seemed quite anxious to explain away the above-mentioned circumstances. [Innuendo.] About this time it was commonly reported in Lidgerwood that Ralph Maxwell was paying Guy Divet, who was at that time Judge William Lauder's

private secretary, the sum of $600 per annum. At the same time and place Ralph Maxwell was loudly boasting to his friends that he paid the sum of $4,000 per year for protection, and that he (Maxwell) got what he paid for. [Innuendo.] I, the undersigned deponent, believe the above to be a true and correct account of the matter therein contained, to the best of my memory and ability. And further deponent saith not. Elmer Lincoln Wendall. Subscribed and sworn to before me this 11th day of April, A. D. 1902. W. B. Phelps, Notary Public.' "

The defamatory meaning ascribed by plaintiff in the several innuendoes to the language of the affidavit, so far as necessary to refer to the same, is, in substance: That the plaintiff in his capacity as judge "unlawfully and corruptly refused to sign papers which it was his official duty to sign, and wrongfully, unlawfully and corruptly informed said Ralph Maxwell and other persons whose property was described in the papers that actions affecting their property had been, or were about to be, commenced, with the intent that the said Maxwell and others might have an opportunity to remove from their property any intoxicating liquors which were, or might be, upon said premises, and thus defeat the purpose of the prospective raid;" that the plaintiff, as judge, "for the purpose of aiding said Ralph Maxwell in carrying on the business of selling intoxicating liquors contrary to law, * * * unlawfully and corruptly furnished copies of private and confidential letters written by the said Wendall to the plaintiff;" and that Maxwell paid to Arthur G. Divet, court stenographer, the sum of $600 per annum for the purpose of keeping informed as to prosecutions, and that plaintiff was in a corrupt manner privy thereto; that said Maxwell paid yearly the sum of $4,000 for immunity, and that plaintiff received said money for granting immunity to said Maxwell.

On September 11, 1902, the defendant served and filed his answer, consisting of: (1) A general denial; (2) an express denial that he wrote the alleged libelous affidavit, "or published it, or any article of similar character or import in any manner whatever to any person whomsoever;" (3) An admission that plaintiff is a citizen of Richland county and district judge of the Fourth Judicial District, and an allegation upon information and belief "that at the times mentioned in the complaint he was an avowed candidate for and openly soliciting the support of the electors of Richland county and elsewhere for their votes and support in securing his

nomination and election to the position of Justice of the Supreme Court of the state of North Dakota; * * * that during all of said time this defendant was an elector within said Richland county; that by reason of all the premises the publication of the article aforesaid to and among said electors as aforesaid was and is a privileged communication; * * * (4) an allegation upon information and belief that the alleged libelous affidavit was composed and published by one Elmer L. Wendall; that the publication was made solely by enclosing said article in sealed envelopes addressed to the individual electors; that this was done by said Wendall in good faith, without intent to charge or be understood as charging the plaintiff with any corrupt or unlawful act or refusal to act, or any official misconduct of any kind whatever, and solely for the purpose of placing before the electors of said Richland county and elsewhere in the state of North Dakota the facts stated in said article, and with the full belief on his part that the statements in said article, each and all, were true, without exception or qualification; (5) an allegation "upon information and belief that each and all of the statements contained in the article so written, composed, printed, and published by said Wendall, as aforesaid, and which is set forth in said complaint as aforesaid, were and are absolutely true, and this he will maintain by competent proof upon the trial."

On October 6, 1902, an order was made, after a hearing, striking out all of the allegations of the answer relative to Wendall's good faith and purpose in composing and publishing the affidavit (paragraph 4, supra) as irrelevant and redundant matter," and requiring the defendant to make more definite and certain that part of his answer in which he alleges the truth of the facts stated in the alleged libelous affidavit (paragraph 5, supra), for the reason, as assigned in the order, that "this part of the answer, being in the nature of a plea in justification, the allegations that the alleged libel is true must be as broad as the charge contained in the libel as set forth in the complaint, and the answer must set forth specific facts showing the libel to be true in that sense." Defendant was given ten days from the date of the service of this order in which to serve a new answer in conformity thereto. The defendant did not serve or file an amended answer within the period fixed by the court, or at any other time, and the case went to trial on February 17, 1903, upon the answer originally served, as modified

by the order hereinbefore referred to; that is, upon (1) a general denial; (2) a specific denial of the composition or publication of the alleged libel; and (3) an allegation that the publication was privileged. The motion attacking the answer was made to the Honorable C. J. Fisk, Judge of the First Judicial District. Honorable John F. Cowan, of the Second Judicial District, presided at the trial and heard and denied the motion for new trial.

The first and chief contention of appellant's counsel is that "the complaint does not state a cause of action for the reason that the alleged libel is not susceptible of a defamatory meaning, and there are no allegations in the way of inducement or colloquium to give the words any defamatory meaning." Counsel are correct as to the absence of the inducement and colloquium. The complaint alleges no extrinsic facts or circumstances for the purpose of affecting the construction and meaning of the words as they appear in the affidavit. The defamatory character of the affidavit must, therefore, be determined from the language employed in it, according to its natural and accepted meaning, regardless of the defamatory meaning which the plaintiff has ascribed to it in the innuendoes; for it goes without saying that it is not the function of a mere innuendo to enlarge, extend or change the natural sense or meaning of the alleged defamatory words. Counsel for appellant contend that, "In order to constitute defamation, it must appear that the defendant has made a defamatory charge against the plaintiff; it is not sufficient that he has stated facts from which an inference against the plaintiff may be drawn; that the words contained in the article published do not embody any defamatory charge against the plaintiff; that every statement in the article is compatible with the plaintiff's judicial integrity; that it is not stated that the judge declined to sign the order from corrupt motives, or that he furnished Maxwell with information of the proceedings in order that Maxwell might remove his liquor from the place, or that he furnished him with any information at all; and that the statements in the affidavit are all entirely consistent with the utmost integrity of the plaintiff in his judicial office, for the refusal to sign the papers might easily be a legitimate refusal, and Maxwell might easily have received his information from other sources, and copies of the letters written to Lauder by Wendall might have reached Maxwell without plaintiff's knowledge." The decisive question upon the objection that the complaint does not

state a cause of action is this: Is the language of the affidavit, standing alone, fairly susceptible of a defamatory meaning? If it is, then the complaint states a cause of action, and the case was properly submitted to the jury, for it is well settled that where the language of an alleged libel is fairly susceptible of a construction which renders it defamatory, and therefore actionable, even though it is also susceptible of a construction which would render it innocent, the complaint states a cause of action, good as against demurrer, and it is for the jury to determine whether the words were used in an innocent or defamatory sense. Newell on Slander and Libel, 281; Wesley v. Bennett, 5 Abb. Prac. 498; Patch v. Tribune Co., 38 Hun, 368; Rundell v. Butler, 7 Barb. 260; Sanderson v. Caldwell, 45 N. Y. 398, 6 Am. Rep. 105; Van Vactor v. Walkup, 46 Cal. 124; Bergmann v. Jones, 94 N. Y. 64; Atkinson v. Detroit Free Press, 46 Mich. 374, 9 N. W. 501; Blakeman v. Blakeman, 31 Minn. 398, 18 N. W. 103; Thompson v. Powning, 15 Nev. 212; State v. Spear, 13 R. I. 327; Dexter v. Taber, 12 Johns. 239; Goodrich v. Woolcott, 3 Cow. 240; Byrnes v. Mathews, 12 N. Y. St. Rep. 74; Hays v. Brierly, 4 Watts, 392; State v. Smily, 37 Ohio St. 30, 41 Am. Rep. 487; Pfitzinger v. Dubs, 64 Fed. 697, 12 C. C. A. 399. In the case last cited the court properly states that "it is only when the words are incapable of a construction injurious to the plaintiff's character that the court is justified in taking the case from the jury."

Likewise it is well settled that it is not necessary, to render words defamatory and actionable, that they shall make a defamatory charge in direct terms. It may be made indirectly, by insinuation, by sarcasm, or by mere questions, as well as by direct assertion in positive terms, and it is not less actionable because made indirectly; and it matters not how artful or disguised the modes in which the meaning is concealed, if it is in fact defamatory. So, too, "a man may slander or libel another as effectually by circulating rumors or reports, or by putting his communication, spoken or written, in the shape of a hearsay, as by making distinct assertions of the slanderous matter and giving them out as true within his own knowledge, or for the accuracy of which he pledges his own veracity." Schenck v. Schenck, 20 N. J. Law, 208; Gorham v. Ives, 2 Wend. 536; McCoy v. Lightner, 2 Watts, 352; Hotchkiss v. Oliphant, 2 Hill, 510; Rundell v. Butler, 7 Barb. 260; Gibson v. Williams, 4 Wend. 320; Andrews v. Woodmansee,

15 Wend. 232; Solverson v. Peterson, 64 Wis. 198, 25 N. W. 14, 54 Am. Rep. 607; Buckstaff v. Viall, 84 Wis. 129, 54 N. W. 111; Allen v. News Publishing Co., 81 Wis. 121, 50 N. W. 1093; Goodrich v. Woolcott, 3 Cow. 231; Comm. v. Child, 13 Pick. 198; Wilson v. Noonan, 23 Wis. 105; Kennedy v. Gifford, 19 Wend. 296; Adams v. Lawson, 17 Grat. 250, 94 Am. Dec. 455; Townshed on Slander and Libel (4th Ed.) sections 164, 169; Newell on Slander and Libel (2d Ed.) 264-268. It is well said in Comm. v. Child, supra, that, "if, in truth, language is published and circulated with intent to slander and defame others, though such intent is artfully concealed by the use of ambiguous, technical or conventional terms, or cant phrases, or any of the other thousand forms in which malice attempts to disguise itself, still, if it really does mean and import the defamatory character attributed to it, it shall not escape legal animadversion and punishment if rightfully and properly charged."

We may now inquire whether the alleged libelous publication is fairly susceptible of a defamatory meaning. If it is, then it will be conceded that its publication is actionable, for, both at common law and under the statute, every person has the right of protection from defamation, whether effected by oral or written publications. Our statute (section 2715, Rev. Codes 1899) defines libel, and this is merely the common-law definition, as follows: "Libel is a false and unprivileged publication by writing, printing, picture, effigy or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Does the language of the writing here in question impute to the plaintiff acts or conduct which would expose him to hatred, or contempt, or ridicule, or obloquy, or cause him to be shunned and avoided? If it can be said to fairly impute to him acts or conduct which would naturally be followed by the consequences named, it is libelous, and it was in that event, as we have seen, for the jury to determine whether that, or a possible innocent sense, was the true sense of the language. The proper rule for our guidance in determining this question is that announced by Lord Mansfield in Peake v. Oldham, 1 Cowp. 272, 273, and approved in Goodrich v. Woolcott, supra: "Where the words, from their general import, appear to have been spoken to defame a party, the court ought not to be industrious in putting a construction upon them different from what they bear in the common accep-

tation and meaning of them." In other words, it is the duty of the court to see what the rest of mankind sees, and to understand the meaning of the writing as the rest of mankind understands it, and to place itself in the position of an unbiased reader of ordinary intelligence, and thus determine the meaning which the language, considered in its natural and popular sense, was intended and calculated to convey." Carter v. Andrews, 16 Pick. 1; Hotchkiss v. Olmstead, 37 Ind. 74; Comm. v. Child, 13 Pick. 205; World Publishing Company v. Mullen (Neb.) 61 N. W. 108, 47 Am. St. Rep. 737; Ayres v. Toulmin (Mich.) 41 N. W. 855; Spencer v. Southwick, 11 Johns. 592; Tillson v. Robbins, 68 Me. 295, 28 Am. Rep. 50; Townshend on Slander and Libel, 177; Newell on Slander and Libel, sections 31, 42.

We cannot see how two minds can differ as to the defamatory character of this writing. In our opinion, the average reader would understand it as charging Judge Lauder with a want of personal and official integrity, and with the grossest kind of judicial corruption. Clearly that is the meaning which it is well calculated to convey to the common understanding. Not only can it be fairly said to impute corrupt acts and conduct to him, but it does more. By a carefully drawn narrative of evidential facts it practically removes the possibility of any other meaning being drawn from it. It is true, as counsel for appellant say, that all of the statements contained in the affidavit may be true in point of fact and still Judge Lauder be an honest and upright judge; that is, it may be that a satisfactory explanation could be given by him as to each of the facts stated, which would render them entirely compatible with his complete innocence. That possibilty however, does not make the publication less libelous, for it will hardly be contended that to charge one with being a thief is not defamatory because the person accused is able to prove his innocence, or that to publish of another a narrative of facts which imputes to him the commission of a crime is not libelous, because, forsooth, he may be able to establish other and additional facts which clearly show that he is not guilty. Obviously, the defamatory character of a writing is to be determined from what it contains, and not by what is omitted from it. The writing here in question is significant in its narrative of incriminating facts and its total omission of exculpatory facts. It will be noted that the writing studiously fails to disclose any explanatory facts tending in any degree to

vindicate the personal or official integrity of the plaintiff, while, on the other hand, it imputes to him corrupt acts in his official capacity, and as to each exhibits a narrative of facts which, to the average reader, would be strong proof of his guilt. In our opinion, the alleged libelous affidavit directly charges the plaintiff with refusing to sign search warrants under circumstances which made his refusal a willful refusal to perform a legal duty in which he had no discretion, for the statute (section 7605, Rev. Codes 1899), as applied to the facts narrated in the affidavit, gave him no discretion; further, that it fairly charges that his refusal was for the corrupt purpose of enabling the persons named in the papers to protect their property and avoid the consequences of a search and seizure; further, that it fairly accuses the plaintiff with betraying confidential communications to an alleged criminal, with the corrupt purpose of shielding him from the legal consequences of his offenses; and by insinuation and indirect language, it imputes to the plaintiff a charge that in his judicial capacity he was privy to a corrupt arrangement whereby, for a money consideration, he extended protection to a person who is described as a notorious lawbreaker, and thus enabled him to continue in his unlawful business. To this extent the language of the affidavit fairly sustains the meaning ascribed to it in the plaintiff's inuendoes. It will be conceded that such acts and conduct would bring the plaintiff into contempt and obloquy, and cause him to be shunned and avoided by all fair-minded men. The complaint, therefore, states a cause of action, and the question as to whether the foregoing was the true meaning of the alleged defamatory publication was properly left with the jury. For illustrative publications which have been held libelous, see Cooper v. Greeley, 1 Denio 347; Stone v. Cooper, 2 Denio 293; Steele v. Southwick, 9 Johns 214, and cases cited.

Error is assigned upon the rulings of the court excluding certain evidence offered to prove the truth of the several statements which are set forth in the alleged libelous affidavit. In this no error was committed. Evidence tending to establish the truth of the statements which constitute the libelous charges was not admissible under the allegations of the answer, upon which the case was tried, and to have admitted such evidence would have been error. If the defendant suffered prejudice because he failed to get before the jury evidence tending to prove, either the truth of the defamatory

charges imputed by the affidavit, or the truth of the facts narrated in the affidavit independent of any defamatory meaning, the fault does not lie in any erroneous ruling of the trial court excluding it, but in his own failure and persistent refusal to file an answer under which such evidence could legally be admitted. It is true, in actions for libel, the truth is a complete defense, but the rule is as old as the law of libel that in order to be proved it must first be pleaded, and that the pleading in justification must be as broad as the defamatory charge. This rule is manifestly just, for when a defendant justifies a publication by pleading the truth of the defamatory charge therein contained, he assumes the position of an accuser, and the plaintiff is in the position of one accused. It is altogether just, therefore, that the defendant should be required to inform the plaintiff in his answer of the exact nature and scope of his accusation, to the end that the plaintiff may be prepared to meet them. It is generally held that not only is a defendant precluded from offering evidence to prove the truth of the alleged libel, in the absence of an answer sufficiently alleging the truth of the libelous charge, but that he may not offer evidence which tends to establish the truth of the statements constituting the libelous charge even upon the question of malice and for the purpose of mitigating damages, except upon a like sufficient answer. At common law, the truth was a complete defense, as it is under the statute; but, if the evidence of the defendant fell short of entirely establishing it, he ran the risk on the one hand of having the damages enhanced by his reiteration of the libelous charge, and, on the other, he was not permitted to avail himself of a partial proof of the facts constituting the libel for the purpose of mitigating damages; that is, for the purpose of rebutting malice and showing an innocent motive in the publication. The protest against this highly unjust rule resulted in the preparation by the Code commissioners of the state of New York and the subsequent adoption by that state of section 165 of the Code of Procedure, which reads as follows: "In the actions mentioned in the last section [actions for libel and slander] the defendant may in his answer allege both the truth of the matter charged as defamatory and any mitigating circumstances to reduce the amount of damages, and whether he prove the justification or not he may give in evidence the mitigating circumstances." This section of the New York statutes and the one preceding it were adopted literally by the territorial legislature,

and have been in force in this jurisdiction since 1877. Sections 5288, 5289, Rev. Codes 1899. They were also adopted in California (sections 460 and 461, Cal. Code Civ. Proc.), also in Wisconsin (sections 2677 and 2678, Wis. St. [Sanborn &. Berryman's]), and in a number of other states. The change wrought by the section above quoted is accurately set forth in section 360 of Bliss on Code Pleading (2d Ed.) as follows: "This section, with the preceding one, was copied in the practice codes of other states, and its full force will be appreciated by bearing in mind the previous New York ruling, against which it was directed. Theretofore, in that state, 'the defense of an action of libel or slander was a very perilous undertaking. If the defendant attempted to justify by proving the truth of the words spoken, it was regarded as a reiteration of the charge, and conclusive evidence of malice; and no evidence in mitigation could be received. If he failed to establish the truth of the charge, the damages were aggravated. He might give evidence in mitigation; but in that case he must admit the falsity of the charge, and could give no evidence tending to prove the contrary.' This section permits the defendant to seek to establish the truth of the alleged defamatory matter, and at the same time to show extenuating circumstances which would reduce the damages, and to show the latter, although he fail in the justification. It destroys the artificial deduction of malice, allows all the circumstances to be brought before the court and jury, and makes the malice and its extent questions of fact to be drawn from all the evidence. The forcible reasoning which justified the old ruling —that a plea of justification, if untrue, was but an aggravation of the original wrong—still has its full effect when it is not made in good faith; and it is accordingly held that if the defendant justifies when he does not believe, and has no reason to believe, the words to be true, his answer may be treated as showing continued and express malice, and should aggravate the damages. The New York courts have given full effect to this section by permitting all pertinent facts to be shown in mitigating, although they tend to prove the truth of the alleged defamatory matter, as, when the defendant had charged the plaintiff with keeping a house of ill fame, he was permitted to allege and prove that the plaintiff's wife and daughter had been guilty of such lascivious and improper conduct as to induce him to believe that he kept such a house; and when defendant had charged the plaintiff with being a thief, and having stolen

from him, he was permitted to plead and prove such wrongful carrying away of corn and appropriation to his own use as did not amount to larceny, although so supposed when he made the charge; and when a defendant had charged the plaintiff with swearing to a lie, and, in attempting to justify, had failed to make out a charge of perjury, the answer was held sufficient to admit evidence in mitigation of damages. * * * The holding in New York is uniform that a defendant may not only justify and plead in mitigation—the statute is express upon that—but also that he may rely upon facts in mitigation which tend to justify." The following authorities sustain the foregoing text: Spooner v. Keeler, 51 N. Y. 527; Chamberlin v. Vance, 51 Cal. 75; Bush v. Prosser, 11 N. Y. 354; Quinn v. Scott, 22 Minn. 456; Distin v. Rose, 69 N. Y. 122; Bisbey v. Shaw, 12 N. Y. 67; Bennett v. Matthews, 64 Barb. 410; Bissell v. Press Pub. Co., 62 Hun, 551, 17 N. Y. Supp. 393; also Kennedy v. Holborn, 16 Wis. 457. The common-law rule, which required a justification to be pleaded, remains unchanged. A defendant who relies upon the truth of the defamatory matter is still under the necessity of pleading it. The law presumes the plaintiff is innocent of the defamatory acts with which he is charged, and "his guilt is new matter of defense, to be pleaded by way of confession and avoidance, and the pleading is subject to the rules that govern the statement of affirmative matter in other cases." See Bliss on Code Pleading, section 361, and cases cited. So, too, it has been held that facts in mitigation are new matter, and, under this statute, must be set out in the answer. Bliss on Code Pleading, section 363. This is the rule in New York under the statute previously quoted. In Willover v. Hill, 72 N. Y. 36, it was said, that "in actions of this description, circumstances in mitigation must be set up in the answer in order to be admissible. Code, section 165; Spooner v. Keeler, 51 N. Y. 527; Bush v. Prosser, 11 N. Y. 347; Bisbey v. Shaw, 12 N. Y. 67; Wachter v. Quenzer, 29 N. Y. 547." Knox v. Commercial Agency, 2 N. Y. St. Rep. 85; Moore v. Bank (Sup.), 4 N. Y. Supp. 378. So, also, it was held in Wisconsin, in Wilson v. Noonan, 35 Wis. 321, under the same statute, that in actions for slander and libel mitigating circumstances cannot, in general, be given in evidence under a general denial, but must be specially pleaded. See, also, Langton v. Hagerty, 35 Wis. 161; Eviston v. Cramer, 54 Wis. 220, 11 N. W. 556; Reiley v. Timme, 53 Wis. 63, 10 N. W. 5; Adamson v.

Raymer, 94 Wis. 243, 68 N. W. 1000; Buckley v. Knapp, 48 Mo. 152. In this case it is unnecessary to go further than to hold that evidence tending to establish the facts which constitute the defamatory charge, and thus tend to establish the truth of the charge itself, is admissible only when offered under an answer properly alleging the mitigating facts and circumstances which it is proposed to establish. To this extent the authorities are uniform; and the reason of the rule which thus requires that facts tending to establish the truth of the charge shall be pleaded when offered in mitigation of damages is the same as that which requires it to be pleaded when offered in complete justification. That this is the rule both at common law and under the statute, see Jarnigan v. Fleming, 43 Miss. 710, 5 Am. Rep. 514; Smith v. Smith, 39 Pa. 441; Knight v. Foster, 39 N. H. 576; Pallet v. Sargent, 36 N. H. 499; Dame v. Kenney, 25 N. H. 321; Smart v. Blanchard, 42 N. H. 137; Snyder v. Andrews, 6 Barb. 43; Stanley v. Webb, 21 Barb. 148; Stees v. Kemble, 27 Pa. 112; Blanchard v. Tulip, 32 Hun, 638; Willover v. Hill, 72 N. Y. 36; Hatfield v. Lasher, 81 N. Y. 250; Langton v. Hagerty, 35 Wis. 150; Henson v. Veatch, 1 Blackf. 369; Teagle v. Deboy, 8 Blackf. 134; Kelley v. Dillon, 5 Ind. 426; Tilson v. Clark, 45 Barb. 178; Sheahan v. Collins, 20 Ill. 326, 71 Am. Dec. 271; Thomas v. Dunaway, 30 Ill. 373; Swift v. Dickerman, 31 Conn. 285; Newell on Slander and Libel (2d Ed.) section 790; Hewitt v. Pioneer Press Co., 23 Minn. 178, 23 Am. Rep. 680; Townshend on Slander and Libel (4th Ed.) section 409. But see Huson v. Dale, 19 Mich. 17, 2 Am. Rep. 66, and Simons v. Burnham (Mich.) 60 N. W. 476. It is entirely clear, therefore, that the defendant, not having answered either by way of justification or by way of mitigation, had no legal right to submit to the jury evidence to prove the truth of the libelous charges imputed by the affidavit. Notwithstanding this, and in the absence of a sufficient answer, the record shows that the defendant was permitted, without objection by the plaintiff, to testify fully as to the truth of all of the facts narrated in the affidavit which were within his knowledge, and to his belief in the truth of the same, as bearing upon his good faith in publishing the affidavit.

Counsel for appellant urge in their brief that the order requiring the defendant to make that part of his answer more definite and certain which alleged that each and all of the facts stated in the affidavit were absolutely true was erroneous. That question is

not before us for review. The order referred to directed the defendant to serve and file an answer conforming to the order within ten days thereafter. This, as we have seen, was not done. The defendant did not appeal or attempt to appeal from the order. He did not specify it as one of the 110 errors urged as grounds for a new trial. It is not assigned as error upon this appeal, and, inasmuch as it was not presented to the trial court as an error upon the motion for new trial, it could not be assigned as error for the first time in this court. But we are entirely agreed that if the question was properly before us, it would not avail the defendant. If the portion of the answer which was held bad had any proper place in the answer it must have been either as a plea in justification or a plea in mitigation. It is not contended that it was sufficient or was intended as a plea in justification. Defendant's counsel repeatedly and emphatically disclaim that it was interposed as a plea in justification, and assert that at no time has the defendant claimed, or did he desire, to plead that the plaintiff was guilty of the corrupt acts which are imputed to him by the affidavit as interpreted by his innuendoes. Neither can it be contended that the allegation in question is sufficient as a plea in mitigation. It merely alleges that each and all of the facts stated in the affidavit are absolutely true. It does not allege that the defendant had knowledge of these facts when he made the publication and that it was made in the belief of their truth. The answer was, therefore, entirely insufficient as an answer in mitigation; for it is well settled that "in pleading circumstances which are claimed to be proper for mitigation of damages, for the reason that they induced the defendant to believe that the charge made by him, complained of by the plaintiff, was true, the fact of such belief, and that it was so induced, is an essential one and should be distinctly alleged. * * * Where such an answer undertakes to set up that the charge was made in a belief of its truth, it must allege not only circumstances tending to produce such belief, but also the fact that such belief, so produced, existed in the mind of the defendant when he made the charge." Gorton v. Keeler, 51 Barb. 475; Dolevin v. Wilder, 34 How. Prac. 488; Hatfield v. Lasher, 17 Hun, 23; Bennett v. Matthews, 64 Barb. 410; Townshend on Slander and Libel (4th Ed.) section 361.

The jury awarded damages in the sum of $7,000. One of the grounds urged for a new trial was "excessive damages appearing to have been given under the influence of passion and prejudice."

The case is one where punitive, as well as compensatory, damages are allowable, and the question of the amount was peculiarly within the province of the jury. We are unable to say, after a careful consideration of the evidence, that the amount awarded shows that the jury acted under the influence of passion or prejudice.

The conclusions announced cover the questions chiefly relied upon by the defendant.

We are of opinion that the defendant was accorded all of his legal rights under the answer upon which he elected to go to trial, and that no error appears upon the record.

The order appealed from will therefore be affirmed. All concur.

GLASPELL, J., of the Fifth Judicial District, sitting in place of COCHRANE, J.

## ON REHEARING.

YOUNG, C. J. A rehearing was ordered in this case upon a number of assignments which were not considered in the foregoing opinion. The questions raised by them have now been fully presented.

The first, and it is a controlling question, relates to the admission in evidence, over defendant's objection, of a certain affidavit made by the defendant, which is known in the record as "Exhibit E." Inasmuch as we have reached the conclusion that the admission of this exhibit was prejudicial error, it will be necessary to set forth the circumstances of its execution and its general character, to the end that the reasons for our conclusion may clearly appear. In 1901 one Joseph Gunn, who was a party to an action in the district court of Richland county over which the plaintiff presides, filed an affidavit of prejudice against the plaintiff, pursuant to the provisions of section 5454a, Rev. Codes 1899, authorizing that procedure, and demanded that the plaintiff arrange for the attendance of another judge to try his case. He was represented in the action by McCumber, Bogart & Forbes, a firm of attorneys of which P. J. McCumber was the leading member. On July 18, 1901, Gunn, through his attorney, P. J. McCumber, and upon the latter's affidavit, caused an alternative writ of mandamus to issue out of this court to compel the plaintiff to comply with the statute above referred to and arrange for another judge. The plaintiff alleged that the affidavit of prejudice had not been made and filed in good

faith, and also alleged that it, as well as a number of similar affidavits which had been filed in other cases, had been made solely at the instigation of P. J. McCumber, and purely from motives of personal and political hostility to the plaintiff, and for the purpose of injuring and discrediting him; that in fact he was not prejudiced or biased in any respect, and had always accorded to litigants represented by said firm of McCumber, Bogart & Forbes all of their legal rights, and extended to them every courtesy possible in their cases. To contradict this and in support of his affidavit of prejudice, Gunn filed in evidence an affidavit of the defendant Jones, which is the affidavit in question. It is of considerable length, and its substance only need be stated. In it the defendant testified that he had been sheriff of Richland county for four years, and as such had ample opportunity to observe the plaintiff's conduct and attitude in the trial of cases. From the knowledge thus acquired, as well as from personal conversation with the plaintiff, he testified to a personal and political hatred on the part of the plaintiff toward P. J. McCumber, so intense in its character that it was visited upon the other members of the firm of which said McCumber was a member, upon the political friends of said McCumber and upon those who became clients of his firm. He further testified that he had been a party to a large number of actions; that when he was represented by the firm of which said McCumber was a member he invariably filed affidavits of prejudice; that when he was represented by other attorneys he filed no affidavits. The affidavit does not charge the plaintiff with personal or official dishonesty or corruption either directly or indirectly, by imputation or otherwise, and no such issue was involved in the proceedings before this court. The entire scope of the testimony given by the defendant in this affidavit is to charge the plaintiff with an intense prejudice against the said P. J. McCumber, and this it does in strong language. This affidavit was offered by the plaintiff and received by the court expressly "for the purpose of showing the state of feeling of the defendant toward the plaintiff, * * *" and "as bearing upon the question of the malice of the defendant in publishing the libel." It was objected to by counsel for defendant upon a number of grounds, and particularly upon the ground that it "has no tendency to show any personal malice, or any malice that would render the matter published actionable, * * *" and "as not tending to show any such malice as would

make a defendant liable for publishing a privileged communication. * * *" The existence of malice, either as a legal fiction or in fact, is essential to a recovery in every action for defamation. "Malice has always been divided into two kinds—implied malice, or malice in law, and express malice, or malice in fact. The first is shown by mere proof of the unauthorized use of the defamatory words charged. The second may be shown by the acts or conduct of the defendant immediately accompanying the utterance of the words, or by the utterance at other times of other and similar defamatory words having reference to the subject-matter of the words charged." Gambrill v. Schooley (Md.) 52 Atl. 500, 508, 63 L. R. A. 427. When the defamatory charge is made upon an occasion which is not privileged, malice in law, or legal malice, is conclusively presumed for the purpose of sustaining the action and a recovery of actual damages, but no further. Wrege v. Jones, 13 N. D. 267, 100 N. W. 705. When it is made upon an occasion which the law deems privileged, legal malice is not thus inferred. Bearce v. Bass, 88 Me. 521, 34 Atl. 411, 51 Am. St. Rep. 446. On the contrary, the law presumes that it is made in good faith and without malice, and in such cases proof of actual malice is essential to sustain the action even for compensatory damages. Evidence of malice is always admissible where punitive damages are claimed. The trial court held that the Wendall affidavit was published on a privileged occasion. Evidence of actual malice was therefore admissible for the twofold purpose—(1) to sustain the action, and (2) upon the question of punitory damages. The sole question is whether the Jones affidavit was admissible for that purpose. In our opinion, it was not, and for two wholly independent reasons. The general rule in actions for slander or libel is that, for the purpose of showing malice, "any action or language of the defendant (before suit brought), tending to prove malice on his part in respect to the particular publication complained of, as distinguished from general ill will, is competent." Under this rule it is competent to show that the defendant spoke or published words imputing the same general charge as that sued upon, although in different language. Enos v. Enos, 135 N. Y. 609, 32 N. E. 123; Cruikshank v. Gordon, 118 N. Y. 178, 23 N. E. 457; Barker v. Prizer, 150 Ind. 4, 48 N. E. 4; Austin v. Remington, 46 Conn. 116; Kennedy v. Gifford, 19 Wend. 295; Thomas v. Croswell, 7 Johns. 264, 5 Am. Dec. 269; Larrabee v. Tribune Co.,

36 Minn. 141, 30 N. W. 462; Gribble v. Pioneer Press Co., 34 Minn. 342, 25 N. W. 710; Fredrickson v. Johnson, 60 Minn. 337, 62 N. W. 388. But this rule does not permit the introduction in evidence in such action of words spoken or published on another occasion and of a different nature from those sued upon, although they are offered entirely for the purpose of showing that the words charged were spoken with a malicious intent. Finnerty v. Tipper, 2 Campb. 72; Howard v. Sexton, 4 N. Y. 157; Frazier v. McCloskey, 60 N. Y. 337, 19 Am. Rep. 193; Root v. Lowndes, 6 Hill, 518; Distin v. Rose, 69 N. Y. 122; Bodwell v. Swan, 3 Pick. 376; Schenck v. Schenck, 20 N. J. Law, 208; Watson and Wife v. Moore, 2 Cush. 135.

From an examination of the cases just cited it will appear that the rule which permits the proof of a repetition of the same charge or of words of the same import does "not permit a distinct calumny uttered by the defendant to be given in evidence to prove his malice in speaking the words for which the action is brought." In Distin v. Rose, supra, it was said that "the repetition of the words and the publicity of the circumstance of their utterance were proper to show the motives of the defendant and extent of the injury. * * * A repetition of words imputing the same charge alleged in the complaint to have been made may be proved to have been spoken at any time before the commencement of the action, but not words imputing a different charge (citing 60 N. Y. 337, and 4 N. Y. 161)." In Howard v. Sexton, supra, the defendant had charged the plaintiff with having sworn falsely before arbitrators. The trial court permitted the plaintiff to prove that at a different time and place the defendant, in speaking of the arbitration, said, "The way they got the money was no better than highway robbery." The court received the testimony "as evidence of malice, to show with what mind the words laid in the declaration were spoken, and for no other purpose." This was held to be reversible error. The court said: "It has sometimes been argued that proof of this character shows general malice upon the part of the defendant which may properly enhance the damages against him. So would evidence that he had set fire to the house of the plaintiff or committed a battery upon his person furnish stronger proof of general malice than words, however opprobrious. * * * The modern, and I think the better, doctrine, is that the action for slander was not designed to punish the defendant for general ill will towards

his neighbors, but to afford the plaintiff redress for specific injuries. To constitute that injury, malice must be proved, not merely general ill will, but malice in the specific case set forth in the pleading, to be inferred from it and the attending circumstances. The plaintiff may show a repetition of the charge for which the action is brought, but not a different slander for any purpose." The doctrine in this case was also laid down in Watson v. Moore, 2 Cush. 133, and was followed and approved in Barr v. Hack, 46 Iowa, 308. See, also, Scougale v. Sweet (Mich.) 82 N. W. 1061, 1065; Jacobs v. Cater, 87 Minn. 448, 92 N. W. 397. Tested by this rule it is apparent, we think, that the Jones affidavit was not admissible. It was made by the defendant upon another occasion, six months before Wendall had made the affidavit which is the basis of this action and eight months before the defendant published it. It does not relate to the latter in any way or to the substance of any of the charges contained in it. The Wendall affidavit, by imputation, charges the plaintiff with a corrupt and willful refusal to perform a legal duty and with shielding criminals for a money consideration; in short with gross and willful judicial corruption and dishonesty. Exhibit E contains no such charges. It is doubtful whether it even shows the existence of general malice. Apparently it negatives it, for it expressly states that when the defendant was represented by attorneys other than McCumber, Bogart & Forbes he filed no affidavit of prejudice. But if it were conceded that an affidavit of prejudice which is made and filed for the purpose of securing another judge and under a statute authorizing that procedure, or a corroborating affidavit of like effect, is per se defamatory and prima facie indicates actual malice in its execution, a proposition we do not admit, still Exhibit E was not admissible in this case, for the charge contained in it is only prejudice (and in this case it is prejudice, not toward the defendant, but toward a third person), and is not a charge of willful corruption, such as is charged in the Wendall affidavit. If the charge of prejudice could be said to be defamatory, it was of a different nature, and under the rule above stated it was not admissible.

The second reason for its inadmissibility does not rest upon the character of its contents, but rather upon the circumstances under which it was made. It was made and filed in a judicial proceeding, and was pertinent to the issues. The occasion was privileged, and exempted the defendant from liability, even though the state-

ments contained in it were both false and malicious. It is well settled that "no action for slander will lie against a witness for what he says or writes in giving evidence in a judicial proceeding, notwithstanding it may be malicious and false. The privilege which exempts a witness from such action is absolute." Hunckel v. Voneiff, 69 Md. 179, 14 Atl. 500, 17 Atl. 1056, 9 Am. St. Rep. 413; Hoar v. Wood, 3 Metc. (Mass.) 193; Liles v. Gaster, 42 Ohio St. 631; Torrey v. Field, 10 Vt. 353, 413; Mower v. Watson (Vt.) 34 Am. Dec. 704; White v. Nicholls, 3 How. 266, 11 L. Ed. 591. Even "words spoken by a witness in a judicial proceeding concerning a stranger to the suit, which are pertinent to the issues involved and fairly responsive to the question propounded to him, are absolutely privileged, notwithstanding actual malice." Cooley v. Galyon (Tenn.) 70 S. W. 607, 60 L. R. A. 139, 97 Am. St. Rep. 823; Cooper v. Phipps (Or.) 33 Pac. 985, 22 L. R. A. 836 and note; Blakeslee v. Carroll (Conn.) 29 Atl. 473, 25 L. R. A. 106; Shinglemeyer v. Wright (Mich.) 82 N. W. 887, 50 L. R. A. 129; Hutchinson v. Lewis, 75 Ind. 55. But this exemption from liability does not mean that the testimony of a witness is privileged in the same sense that communications between husband and wife, attorney and client, and physician and patient are privileged, i. e., that they cannot be offered in evidence. The conditions under which the testimony of a witness may be introduced in other actions or proceedings are so well known that they need not be stated. The words of a witness are privileged in a sense that they are not actionable. For greater freedom in eliciting truth the law makes the occasion one of absolute privilege, and presumes that the statements of the witness are made in good faith and without malice. It is not because the testimony of a witness is privileged that it is not admissible to prove actual malice. The real reason, and it is a simple one, is that the statements of the witness, having been made upon a privileged occasion, are presumed to have been made in good faith and without malice. It ought to be self evident that a statement made under circumstances from which the law presumes that it was made in good faith and without malice cannot afford proof that a similar or other statements were made with malice. As one case puts it, "a malicious intent cannot be predicated upon a truthful exposition of facts." Throckmorton v. Evening Post P. Co., 35 App. Div. 396, 54 N. Y. Supp. 887. The case of Watson and Wife v. Moore, 2 Cush. 133, is directly in point.

The plaintiff alleged in that case that the defendant had stated that he was guilty of "stealing two beds." For the purpose of showing his actual malice in making the statement, the plaintiff was permitted to introduce a sworn complaint which the defendant had filed with a magistrate, charging the plaintiff with stealing "a lot of wood and old iron," and also to introduce the testimony of the defendant given upon the trial. This was held to be error, for two reasons: (1) Because the words used in the sworn complaint did not relate to the charge which was the subject of the action, and (2) because the words were used before a magistrate having jurisdiction of the supposed offense. Upon the second ground the court said: "The complaint made by the defendant, and his testimony in support of it, on the hearing before the magistrate, are not to be regarded as slanderous words spoken by the defendant. They were proceedings in a court of justice, before a magistrate who had jurisdiction of the offense charged; and the defendant is in no way to be held answerable for them as for a slander. This has been the settled law ever since the reign of Henry VII. Beauchampe v. Croft, Keilw. 26, and Dyer, 285; March on Slander (Ed. 1674) 92; Bac. Ab. 'Slander,' E; 2 Stark. Ev. 874; 2 Leigh's Nisi Prius, 1369; Fowler v. Homer, 3 Camp. 294; Hoar v. Wood, 3 Metc. (Mass.) 197. If the charge then made by the defendant was false, and known by him to be so, he may be indicted for perjury. If the charge was malicious, and without probable cause, he is liable to the plaintiffs in an action for malicious prosecution. Even in such an action, neither malice nor want of probable cause would be presumed in the first instance, but both must be proved by legal evidence. In the present case, the proceedings before the magistrate, as given in evidence at the trial, do not warrant the inference that the defendant was actuated by malice. The legal presumption is that he acted bona fide, and the contrary cannot be shown on the trial of the issues joined in this case. If it is not shown, and cannot be shown, that the defendant was then actuated by malice, those proceedings furnish no evidence that the charge for which this action is brought was maliciously made by him. * * * In the present case, the defendant made a complaint to the magistrate, on oath, and testified, on oath, at the hearing. For this reason, as before stated, he must now be presumed to have acted with good faith."

McDavitt v. Boyer (Ill.) 48 N. E. 317, is to the same effect. The court said: "It is true, as a general rule of law, that, if words are in themselves actionable, malicious intent in publishing them is an inference of law, and therefore needs no proof. * * * Generally speaking, every defamation is presumed by law to be malicious. * * * But this general rule is subject to the important qualification that, where the injurious utterance is privileged, the law does not presume malice, and express malice must be proved by the plaintiff. Privileged communications constitute an exception to the general rule that the utterance of actionable words implies malice. Such privileged communications are presumed not to be malicious; in other words, the law does not imply malice when the injurious communication is privileged. In such case the occasion on which the utterance was made prevents the ordinary inference of malice. * * * The question then arises, what are privileged communications, within the signification of the term as applicable to cases like the present? In other words, when are injurious utterances privileged, so as to prevent the inference of malice? In the first place, such privilege belongs to a witness testifying upon the stand in a court of justice. No action for slander will lie against a witness for what he says or writes in giving evidence in a judicial proceeding, notwithstanding it may be malicious or false. The privilege that exempts a witness from such action is absolute. An action for slander will not lie for testimony given in a case if such testimony is pertinent and material to the subject of inquiry. No witness should be compelled to take the stand with the fear hanging over him that an action of slander may at some time be brought against him for what he says as a witness. Public policy and the interests of public justice require that statements made by witnesses when testifying in courts of justice should be privileged, and that witnesses should not be liable in civil actions for reflections thrown out in delivering their testimony. * * * Cooley, in his work on Constitutional Limitations (6th Ed. 542), says: 'Among the cases which are absolutely privileged on reasons of public policy, that no inquiry into motives is permitted in an action for slander or libel, is that of a witness giving evidence in the course of a judicial proceeding. It is familiar law that no action will lie against him at the suit of a party aggrieved by his false testimony, even though malice be charged.' * * * Whatever is said or written in a legal pro-

ceeding, pertinent and material to the matter in controversy, is privileged; and no action can be maintained upon it. Spaids v. Barrett, 57 Ill. 289, 11 Am. Rep. 10; Strauss v. Meyer, 48 Ill. 385. Malice cannot be predicated of what is said or written in a proceeding in a court of justice. Words spoken to a magistrate in the course of a judicial proceeding, though they may be slanderous and malicious, are not actionable. * * * Mere proof of what he uttered under these circumstances is not prima facie proof of malice. The utterances thus made do not of themselves imply malice." The following cases directly sustain our conclusion that a statement made upon a privileged occasion is no evidence that the same or other statements were made with actual malice: Fahr v. Hayes (N. J.) 13 Atl. 261; Evening Journal Association v. McDermott, 44 N. J. Law, 430, 43 Am. Rep. 392; Shinglemeyer v. Wright (Mich.) 82 N. W. 887, 50 L. R. A. 129. The contrary view, expressed in Davis v. Starrett, 97 Me. 568, 55 Atl. 516, and relied upon by plaintiff's counsel, is based upon reasons which wholly ignore the presumption of good faith with which the law clothes all statements made upon privileged occasions. For the reasons already stated it is patent that the admission of Exhibit E was error, and it is equally clear, we think, that it was highly prejudicial. It was introduced solely to show the defendant's malice in publishing the Wendall affidavit, and was submitted to the jury for that purpose and no other. In it the defendant testified to facts bearing upon an alleged personal and political enmity existing between the plaintiff and P. J. McCumber, adversely to the plaintiff, and that as a consequence the plaintiff was prejudiced in all cases in which said McCumber was interested. The trial court submitted this to the jury as competent evidence of malice, and upon it the jury were authorized to sustain the plaintiff's action and to measure the damages to be awarded. To what extent the erroneous admission of this affidavit, and its emphatic statements in reference to a bitter controversy wholly foreign to this case, contributed to sustain the plaintiff's cause of action, or how much it added to the award of punitory damages, cannot, of course, be known; but that it was highly damaging is certain. Whether, as counsel for plaintiff contend, the affidavit was competent for impeaching the testimony of Jones, which was, in effect, that he was and had been personally friendly to the plaintiff, and had always said that he was an upright judge and an upright man, we need not determine. It is sufficient

to say that it was not offered in evidence or given to the jury for that purpose. It is true, evidence which is competent for one purpose cannot be excluded because it is incompetent for another purpose. It may be admitted and restricted to the proper purpose. As to such evidence this court had said that: "Where evidence is properly admitted in the case for one purpose, it will not be presumed, in the absence of a showing, that it was considered for a purpose for which it was not proper; particularly when the court, in its charge, directs the jury to consider it only for its proper purpose." State v. Kent, 5 N. D. 516, 67 N. W. 1052, 35 L. R. A. 518; Letton v. Young, 2 Metc. (Ky.) 558. Had the affidavit in fact been offered for impeachment, the above rule would have been applicable; but it was not offered for that, but for an improper purpose solely, and the injury resulting is not diminished by the fact that it might have been offered and restricted in its use for another and proper use.

One further question remains. It is urged on behalf of the defendant that the rule followed in the original opinion, i. e., that the truth of the alleged libelous charge cannot be proved under a general denial and in the absence of a plea of justification, does not apply when the charge is privileged. There is authority for this view. In Edwards v. Chandler, 14 Mich. 474, 90 Am. Dec. 249, this language was used: "Where a communication is privileged, the plaintiff cannot recover without proving affirmatively, not only the falsehood of its contents, but also that it was published with express malice. Unless he can prove both of these grounds, he must fail. The falsehood being a necessary part of the case to be made out by the plaintiff, the truth is but a contradiction of that case, and may be made out under the general issue, therefore without resort to a special plea or notice." The rule laid down in this case and others tending to sustain it is unsound in principle and opposed to the great weight of authority. It is not a part of the plaintiff's case to prove the falsity of the words. "The falsity of the words is indeed always presumed in the plaintiff's favor." Newell on Slander and Libel 771; Palmer v. Mahin, 120 Fed. 737, 57 C. C. A. 41; Mallory v. Bennett (C. C.) 15 Fed. 371. And this is true when they are used on a privileged occasion. "A libelous statement made on a privileged occasion is presumed to be untrue, and the burden of proving its truth is on defendants, though the nature of the occasion saves them, in the first instance,

from the imputation of malice." Cranfill v. Hayden (Tex. Civ. App.) 75 S. W. 573. In Atwater v. Morning News Co. (Conn.) 34 Atl. 865, the contention was advanced that as to a statement made upon a privileged occasion the plaintiff has the burden of proving its falsity. This the court denied, and said: "The opinion of the court in Edwards v. Chandler, 14 Mich. 475, 90 Am. Dec. 249 (and one or two other cases cited by the defendant), seems to afford excuse for this claim, but we hardly think that such was the real intention of the learned judges who gave the opinion in those cases." The only exception that occurs to us, and it is more apparent than real, is when a plaintiff, to prove actual malice, attempts to show that the defendant published the statement, knowing it to be false, a method of proving malice which is always available, and which, if successful, affords conclusive evidence of malice. The plaintiff must, in that event, show (1) that the statements are false in fact, and (2) that defendant knew them to be false when he published them. In such cases the defendant may meet the plaintiff's evidence with evidence that the statements were true. This is meeting the issue as to the truth of the charge, which the plaintiff has voluntarily tendered. When it is not thus tendered, the defendant cannot offer evidence of the truth of the charge unless he pleads it.

For the error above pointed out, the order denying a new trial must be reversed, and it is so ordered. All concur.